VERDIE MARTIN, ET AL.

V.

LINKOUS COLEMAN, ET AL.

Record No. 841106

November 25, 1987

Present: All the Justices

*Randall A. Eads* for appellants.

No brief or argument for appellees.

THOMAS, J., delivered the opinion of the Court.

The issue in this dispute over a will is whether the formalities surrounding the execution and attestation of the last will and testament of Jake Coleman and Maudie Coleman were met. The Colemans' joint will was executed on October 20, 1981. Maudie Coleman died February 6, 1983. Jake Coleman died June 25, 1983. The paper writing was admitted to probate by the clerk of court on October 18, 1983. Certain heirs-at-law of the decedents appealed the clerk's order of probate.

The trial court heard evidence *ore tenus* and considered exhibits containing writing samples of the decedents. In its final decree, the trial court declared that the writing was not a will and should not have been admitted to probate.[1] The trial court gave the following reason for reaching that conclusion: "[I]t is the opinion of this Court that the formalities surrounding the execution and attestation of the paper writing purporting to be the Last Will and Testament of Jake Coleman and Maudie Coleman, does not comply with those required by statute . . . ." Verdie Martin, one of the beneficiaries under the will, appealed.[2]

In our opinion, the statutory formalities were met. Therefore, we will reverse.

The formal requirements for a will are contained in Code § 64.1-49, which provides in pertinent part as follows:

No will shall be valid unless it be in writing and signed by the testator . . . in such manner as to make it manifest that the name is intended as a signature; and . . . the signature shall be made or the will acknowledged by him in the pres-

---

[1] In its bench ruling at the end of the trial, the court gave two reasons for concluding that the writing was not a will. The first was that the statutory formalities were not met. The second was that the trial court did not believe the purported signatures of the testators had actually been made by the testators. This second ground is not mentioned in the final decree. Since courts of record speak only through their orders, we are bound to dispose of this appeal on the basis of the final decree even though the trial court's remarks from the bench indicate that lack of formalities was only one part of the problem with the paper writing. *See Hill* v. *Hill*, 227 Va. 569, 578, 318 S.E.2d 292, 297 (1984).

[2] The parties to the appeal are as follows: The appellants are Verdie and Michael Martin. The appellees are Linkous Coleman, Ricky Randy Coleman, Pamela Lynn Coleman Williams, Johnny Coleman, Randal Coleman, and Glenda Gail Coleman Dawson.

ence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary.

The paper in this case was typed. It purports to be the joint will of Jake Coleman and Maudie Coleman. The word "Signed" is located near the bottom of the writing, followed by two lines, one above the other. The first line contains an "X" and the name, "Jake Coleman." The next line contains a signature, "Maudie Coleman." Below the signature lines are two lines labeled "Witness." One line is above the other. The first line is signed "Larry C. Hurt." The second line is signed "Phillip W. Whitt."

The two witnesses testified at trial. Larry Hurt testified that he had known Jake and Maudie all his life. He said that on October 20, 1981, he saw Jake and Maudie at their daughter's store. Hurt recalled that it was 9:30 or 10:00 in the morning when he saw the couple. According to Hurt, he had an opportunity to observe the two and, in his opinion, they appeared to know what they were doing.

Hurt said that Jake, Maudie, and their daughter Verdie Martin, all asked him to sign a document. When asked specifically what he was to sign, Hurt testified that Jake, Maudie, and Verdie said "[w]e've got some business to fix up here," and "[w]e'd like for you to sign this will for us." Hurt said that the other witness, Phillip Whitt, was present during the exchange and that they asked Whitt to sign at the same time.

Hurt stated further that the individuals involved were all within three or four feet of each other, "just standing pretty close." He said that each participant, that is, Jake, Maudie, Whitt, and he could hear the others. Nothing was causing a disturbance to prevent hearing. The paper writing was lying on the counter in the store.

Hurt saw both Jake and Maudie sign the paper. He was three or four feet from Jake when Jake signed. He was the same distance away when Maudie signed. Each person signed the paper in the presence of everyone else. Hurt knew of nothing that would have blocked Jake and Maudie's view of him signing the paper. When Hurt signed, Jake and Maudie's names were already on the will. Hurt testified that both Jake and Maudie saw Whitt sign. According to Hurt, Jake signed first, then Maudie, then Hurt,

then Whitt. At trial, Hurt acknowledged his signature on the writing. He identified the writing as the one he had signed in October 1981.

Whitt also testified. He was twenty years old at the time he signed the writing in 1981. He remembers placing his signature on a writing at Verdie's store. At trial, he recognized his signature on the disputed paper. Whitt confirmed Hurt's testimony that Hurt signed the paper first. Whitt testified that Verdie asked him to sign her mother and father's will as a witness. He does not recall Jake saying anything to him. However, on cross-examination, he recalled that Maudie asked him to sign her will. Whitt understood that he was signing the will of Jake and Maudie Coleman. Whitt also confirmed Hurt's testimony that during the signing of the paper, everyone was within three to four feet of each other.

Whitt also admitted that there were some things he did not remember. He did not know what Jake Coleman wrote on the paper, nor who placed the X in front of Jake's name, nor what Maudie Coleman wrote. Further, he could not remember whether anyone told him that Jake and Maudie had written on the paper. He did not remember whether the X was in front of Jake's name when he, Whitt, first saw the writing.

The trial court apparently concluded that the formalities of execution and attestation were not met because of the things that Whitt did not remember. But, instead of focusing upon what Whitt did not remember, the trial court should have focused upon what Hurt, the other witness, did remember.

The facts of this case are similar to those in *Cheatam* v. *Hatcher*, 71 Va. (30 Gratt.) 56 (1878). There as here, the trial court found that the writing was not a will. This Court reversed. The issue in *Cheatam* was whether the will had been subscribed by the witness in the presence of the testatrix. There, as here, one subscribing witness testified that all the requirements of the statute had been met. The other subscribing witness suggested that the requirements had not been met. We stated that had the trial court based its ruling on the ground that it believed the one witness and not the other, then its finding of no will would have been upheld on appeal as being based on the credibility of one witness versus that of the other. But this Court was convinced that the trial court had based its conclusion on the mistaken legal proposition that a will must be *proved* by both subscribing witnesses. We said that was a misconception of the law. We said the proper rule

is that any one subscribing witness can prove the execution and attestation of the will by himself and the others, and if his testimony is satisfactory that will suffice. 71 Va. (30 Gratt.) at 60. We pointed out that if the rule were otherwise, then the validity of wills would be made to depend upon the memory and good faith of a witness, and not upon reasonable proof that all the statutory requirements had been met. *Id.* at 61.

In this case, each and every statutory requirement was fully and completely established by Hurt's testimony. Jake and Maudie both acknowledged the writing as their will. Both the witnesses signed it in the presence of Jake and Maudie. The witnesses were of age and recognized their signatures at trial.

Moreover, Whitt's testimony did not contradict Hurt's testimony; it simply did not cover every aspect of the execution of the paper. Yet, even in that regard, Whitt clearly established that Maudie's will was fully executed and attested. If there was any deficiency in his testimony it concerned Jake's will. But to the extent that Whitt's testimony can properly be seen as suggesting a lack of formalities regarding the execution of Jake's will, that testimony must be received with caution by the courts. In *Cheatam,* we made clear that when a person who has signed a will as a witness "undertakes to invalidate the will his testimony is to be received with suspicion." *Id.* at 64.

■ It has long been the rule in Virginia that courts lean strongly in favor of upholding the validity of wills fairly made, where there is no imputation of fraud. *Neil* v. *Neil,* 28 Va. (1 Leigh) 6 (1829). Toward that end, every reasonable presumption ought to be made in favor of finding proper execution of a will. *Young* v. *Barner,* 68 Va. (27 Gratt.) 96, 106 (1876). In this case, the trial court did not make a finding of fraud. The only issue is that of execution and attestation. In light of the rules which attend the consideration of wills, we hold that the trial court erred in ruling that the formalities were not met.

We will reverse the judgment of the trial court and remand the case with instructions that the paper writing here in dispute be admitted to probate.

*Reversed and remanded.*