Robert M. LAUGHLIN; Miriam W. Laughlin; Red House Cove Association, Inc.; John Briar, III; Jean Kominars, Plaintiffs–Appellants,

v.

Richard C. MORAUER, Morauer & Hartzell, Inc., Defendants–Appellees.

and

Jean T. Morauer; Does 1–10, Defendants.

RED HOUSE COVE ASSOCIATION, INC.; William Russell Seabaugh; Jane Woodward, Plaintiffs–Appellants,

and

Catherine Craybill; Chris Craybill, Plaintiffs,

v.

MORAUER & HARTZELL, INC.; Richard C. Morauer; Donald Hodel, Secretary of Interior, Defendants–Appellees,

and

Jean T. Morauer; John Does 1–10, Defendants.

Nos. 86–2185, 86–2189.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1987.

Decided June 9, 1988.

Anne Marie Whittemore (McGuire, Woods, Battle & Boothe, Richmond, Va., Joseph Hyman, Echols & Hyman, Arlington, Va., Marian K. Agnew, McLean, Va., on brief), for plaintiffs-appellants.

Jerry K. Emrich (Walsh, Colucci, Stackhouse, Emrich & Lubeley, Arlington, Va., on brief), for defendants-appellees.

Before WIDENER, PHILLIPS and WILKINS, Circuit Judges.

WIDENER, Circuit Judge:

The plaintiffs appeal from an entry of summary judgment on the complaints and judgment on the counterclaims in favor of the defendants below. The entry of these judgments gives the defendant fee simple title in a piece of property shown as "Park" on the plat of the subdivision in which the individual plaintiffs are lot owners and Red House Cove Association is an association of lot owners. We vacate the judgment of the district court which decided there was no easement in favor of the public and hold that the land described on the plat as "Park" is subject to a public easement. The district court also decided that fee simple title lay in defendant Morauer because

of the absence of a public easement. We vacate that judgment also.[1]

Eugene and Harriet Frost owned what had been the Wellington Farm in Fairfax County, Virginia. The property is located on the Potomac River approximately halfway between Alexandria and Mount Vernon. In July of 1912, without any reservation, they filed a plat of the subdivision thereof in the land records of Fairfax County establishing Wellington Subdivision.

The subdivision plat contains forty-nine lots. At the time of recordation, a rail line ran south from Alexandria along the western border of the property with a stop at the Wellington Farm. Thus, the plat includes the rail station, depicted as "Station", as a planned part of the subdivision. To the east of and adjoining the Station across only a public street, the plat has an area depicted as "Overlook". Further east of and adjoining the Overlook is a twenty-eight foot strip of land marked "Walk to Park" (Walk). East of and adjoining the Walk, across only a platted public street, is the remaining land abutting the river marked "Park" (Park). The lots of the subdivision are on the north and south sides of this area between the Station and the Park. The Park is quite small, about 25 feet on the west adjoins a public street, the north and south sides are 238.9 feet and 244.5 feet, and the river front is 163 feet.

Some of the lots were sold and initially developed for summer houses. As the subdivision progressed, permanent residences were established. In the early 1930's, the rail line was replaced by Memorial Parkway from Alexandria to the Mount Vernon Estate. This background has been gathered from papers in the record.

In 1955, the owners of the land abutting the areas shown on the plat as Overlook and Walk vacated any public rights in those areas in accordance with law of Virginia applicable at that time. The area denoted as Park remained as shown on the original plat. We note that the Park adjoins a public street called Southdown Road, so there is free access to the entrance to the Park by the public.

Morauer, wanting to purchase the Park for a personal residence, obtained, in 1983, a special warranty deed from a grandson and granddaughter of the Frosts' nephew who had inherited from Harriet Frost who had died in 1933, Frost having died in 1916. Prior to Morauer's recording the deed to the Park in Fairfax County, the records showed no conveyance of the property from the Frosts or any successor in title. Further, county records showed the Park to be tax exempt. The Frosts' dedication and plat are among the records. At the filing of Morauer's deed, the property was removed from tax exempt status. Morauer paid the taxes for 1983 and the two preceding years.

Morauer began clearing the property.

Some of the property owners then brought suit in the circuit court of Fairfax County. Styled as *Edge v. Morauer*, the suit began with eight plaintiffs. Mrs. Edge was the owner of the lot on the north side of the park.[2] The seven others were property owners within Wellington Subdivision.

The *Edge* complaint prayed for an injunction to keep Morauer from restricting the free use and enjoyment of the park by the lot owners and residents of the subdivision.

1. These cases, consolidated for appeal, were brought separately in the district court. Case number 86–2185 has as plaintiffs Robert and Miriam Laughlin, Red House Cove Association, Inc., John Briar, Jean Kominars and Does 1–10. The defendants were Richard C. Morauer and Morauer & Hartzell, Inc. Jean T. Morauer was later added as a defendant. Case number 86–2189 has as plaintiffs Red House Cove Association, Inc., Chris and Catherine Craybill, William Russell Seebaugh, Jane Woodward and John Does 1–10. The defendants were listed as Morauer & Hartzell, Inc., Richard C. Morauer, Donald Hodel, Secretary of Interior, and Jean T. Morauer, who again was later added. The Does were replaced with real people in each case.

2. She later sold her lot to the Laughlins who owned the lot abutting the south side. The Laughlins were also parties to the *Edge* case in the Circuit Court of Fairfax County. The Laughlins presently own the lots adjoining the Park on its north and south sides.

Further, the complaints asked for declaratory judgment enforcing their right of scenic easement and for a restrictive covenant running with the land. *Edge,* et al, sought to establish "easements appurtenant in the streets, parks and other open spaces" in Wellington Subdivision in favor of the lot owners therein.

A hearing was held in September of 1984. The court found that the complainants had what was called a private easement, but limited to access to the river and the use of an area on the river beach. The court instructed the parties to determine the location of the easement of access and the extent of the use of the beach.

At the September hearing, the court suggested to counsel that the issue of public easement be addressed. Complainants' counsel proceeded, nevertheless, based on the pleadings, with the argument that the Frosts had intended to create private easements for the benefit of the Wellington lot owners.

A second hearing on the matter was held in December of 1984. Complainants, Mrs. Edge, the Laughlins and the Lyons, had retained, and were now represented by, new counsel. They moved for leave to amend the pleadings to raise the issue of a public easement. Defendant objected, and the court, after first granting the motion, later denied it. In a colloquy with the attorneys, the court said that it was going to decide that the then present complainants had not proved a public easement, but that would not exclude others from doing so. That language is not contained in the final order.

A final order was entered in May of 1985 which denied leave to amend the complaint to establish a public easement. It "ORDERED that the Defendant's motion to strike the evidence with regard to the allegation of implied private easements and with regard to the issue of a public easement is granted and judgment is entered for the Defendant...."

A petition for appeal was filed in the Supreme Court of Virginia and was not granted.

Morauer then moved to Maryland. Two suits were initiated in the United States District Court in Alexandria based on diversity of citizenship. The first, *Red House Cove Assn., Inc. v. Morauer* (Civil Action No. 86–0237–A), prayed for declaratory and injunctive relief and damages and the finding of public and private easements. Other property owners filed suit, *Laughlin v. Morauer* (Civil Action No. 86–0333–A), *inter alia,* disputing title and claiming easements.

Morauer answered and asserted the affirmative defenses of res judicata and collateral estoppel as to the parties and issues as a result of the judgment in the Fairfax County case. Morauer filed a counterclaim in ejectment in both suits. The counterclaim asserted that the plaintiffs had no interest of any kind in the disputed property. Morauer asked that he be adjudged fee simple owner of the property.

The cases were consolidated for trial. On October 24, 1986, the court granted summary judgment to Morauer on the complaints, but denied summary judgment on the counterclaims. On November 4th, the court gave Morauer judgment on the counterclaims, and a final order was entered on November 14, 1986. This appeal followed.

The issues on appeal are the claims of the plaintiffs that the trial court erred in holding that the plaintiffs were barred by res judicata or collateral estoppel, on the basis of the judgment of the state court in *Edge,* from challenging Morauer's title under the deed from the Frost family descendants; that there was no public easement in the area designated on the Frost plat as the Park; and in holding that the underlying title to the Park was not in the hands of the adjoining owners; rather, the fee simple title was in Morauer.

The district court did not file an opinion or findings of fact and conclusions of law in writing; rather, it delivered such from the bench.

As to the three questions presented on appeal, the rationale for its decision was based on the res judicata or collateral estoppel effect of the *Edge* case in the Circuit Court of Fairfax County. This, of course,

leaves that question the principal issue to be decided on appeal.

We commence with the proposition that in a diversity case Virginia law governs the preclusive effect given to the judgment of a Virginia court. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). For the purpose of analyzing a Virginia judgment, we also follow Virginia law that courts of record speak only through their orders. An appeal from such an order is on the basis of the final decree even though the remarks of the trial court from the bench may indicate other problems. *Martin v. Coleman*, 234 Va. 509, 362 S.E.2d 732, 733 n. 1 (1987). In the *Edge* case, the complainants were Virginia Edge, the Laughlins, and, in addition, Alice and Pete Hume, Frank and Murielle Miller, and Douglas and Carolyn Smith, all lot owners in the Wellington subdivision.[3] The final order of the Virginia court in the *Edge* case decided, as recited above, there was no implied private easement "with regard to the allegation" thereof, and that there was no public easement "with regard to the issue" thereof. We equate private easement with easement appurtenant alleged in the pleadings. See *Lester Coal Corp. v. Lester*, 203 Va. 93, 122 S.E.2d 901, 904 (1961). That final decree also denied the motion of the complainants to amend their complaint in order that the court decide whether or not there was an easement in favor of the public.

In deciding that the holding of the Virginia circuit court in *Edge* does not have res judicata or collateral estoppel effect, we need not depend on the language of the Virginia circuit court in a colloquy with the attorneys that it was to bind only the parties to that suit, for in Virginia a judgment based upon a right which has not been pleaded and claimed is void. *Ted Lansing Supply Co., Inc. v Royal Aluminum and Construction Corp.*, 221 Va. 1139, 277 S.E.2d 228, 229 (1981); *Potts v. Mathieson Alkali Works*, 165 Va. 196, 181 S.E. 521, 525 (1935). An exception may be when an issue is tried by consent, certainly not

present here. See *Tarter v. Wilson*, 95 Va. 19, 27 S.E. 818 (1897).

So, the decree of the Virginia court in *Edge* so far as this case is concerned has only decided there is no private easement or easement appurtenant to use the Park in favor of certain lot owners in the Wellington subdivision. There was no binding decision that there was no easement in favor of the public. This is true because Virginia courts of record speak only through their orders, and judgments of Virginia courts based on matters which have not been pleaded are void. This latter proposition is annunciated by the fact that the Laughlins, et al, in the *Edge* case attempted to amend their complaint to include the issue of whether an easement existed in favor of the public, and that attempt was specifically denied by the trial court. When we take into account that the issue of whether or not an easement appurtenant exists in favor of the Laughlins and some other lot owners in Wellington subdivision was decided adversely to them in *Edge*, and that at least the parties in *Edge* should be bound by that decision here, we especially note that issue has not been appealed. The issue which is before us on appeal is whether or not an easement in favor of the public exists, and, on that question, the plaintiffs here are not bound by the decision of the Virginia court in *Edge*. Thus, we need not consider any question of privity in deciding the questions of whether or not res judicata or collateral estoppel applies, for the final decree of the Circuit Court of Fairfax County in *Edge* is not binding as it may have found there was no easement in favor of the public, such having not been pleaded.

The essential error of the district court in its holding that the judgment in *Edge* had res judicata or collateral estoppel effect was its finding that the question of whether or not there was a public easement was decided by the Circuit Court of Fairfax County so as to have binding effect. That it was not so decided, we have demonstrated just above.

The next issue we deal with is whether or not there was an easement in favor of

3. As disclosed by an undated copy of the Virginia bill in equity made a part of the appendix.

the public to which the Park was subservient. We are of opinion that there was.

In 1912, when the plat of Wellington Subdivision was recorded by the Frosts, the Plat Act was in effect. It had been enacted in 1897 and is found at § 2510a of the Virginia Code of 1904.

It provided that in subdivisions of land into three or more parts for additions to towns or cities or suburban lots that a plat must be recorded which accurately described the subdivision. Such plat had to be recorded with a statement that it was with the free consent and in accordance with the desire of the owners and filed with the clerk of the court. In Virginia, deeds, maps, plats, etc., are filed in the office of the clerk of the circuit court, previously known either as circuit courts or corporation or county courts. Pertinent to our inquiry are certain parts of the Plat Act:

(3) The acknowledgment and recording of such plat shall operate to create a public easement or right of passage over such portion of the premises platted as is on such plat set apart for streets or other public use, and shall be equivalent to a deed in fee simple to such portion thereof as is therein dedicated to charitable, religious, or educational purposes....

(5) Any such plat may be vacated by the proprietors thereof at any time before the sale of any lot therein by a written instrument declaring the same to be vacated duly executed, acknowledged, or proved and recorded in the same office with the plat to be vacated, and the execution and recording of such writing shall operate to destroy the force and effect of the recording of the plat so vacated and to divest all public rights in the streets, alleys, commons, and public grounds laid out or described in such plat. And in cases where any lots have been sold the plat may be vacated as herein provided by all the owners of lots in such plat joining in the execution of the writing aforesaid.

(7) When any part of a plat shall be vacated as aforesaid the proprietors of the lots so vacated may enclose the streets, alleys, and public grounds adjoining said lots, or making such other disposition of the same as may be provided in the instrument vacating the same, and the title to the same shall be transferred or vest accordingly.

█ In Virginia, it has been decided beyond any doubt that "[a] park is a public use." *Rudacille v. State Commission,* 155 Va. 808, 814, 156 S.E. 829 (1931). The Virginia court followed the Supreme Court of the United States' opinion in *Shoemaker v. United States,* 147 U.S. 283, 13 S.Ct. 361, 37 L.Ed. 170 (1893). The plat of Wellington Subdivision filed by the Frosts is in compliance with the Plat Act. Thus, pursuant to § 2510a, subd. 3 of that Act, the filing thereof created "a public easement ... over such portion of the premises platted," as was set apart for the Park. Filing the plat was unmistakably a dedication by the Frosts of the Park to public use. When the Frosts sold lots with reference to the recorded plat, they thereby "conclusively and perpetually dedicated" the designated areas on the plat to the uses indicated. *Payne v. Godwin,* 147 Va. 1019, 133 S.E. 481, 482 (1926).

Although the Virginia court has construed a recording under the Plat Act to be irrevocable by the dedicator, *Brown v. Tazewell County Water & Sewerage, Auth.,* 226 Va. 125, 306 S.E.2d 889, 891 (1983), it has nevertheless required acceptance of the use by acts of the governing body or from long continued public user of requisite character. *Brown,* 306 S.E.2d at 891; *Ocean Island Inn v. City of Virginia Beach,* 216 Va. 474, 220 S.E.2d 247, 250 (1975).

█ Keeping in mind that the purse of a county government is among the dearest things to its heartstrings, we think it of considerable significance that the Park was taken off the tax rolls of Fairfax County with the recording of the plat of Wellington Subdivision and remained off the tax rolls until after Morauer recorded his deed in 1983. The tax map of Fairfax County, extant at least until Morauer recorded his deed, showed the land to be a park. The Park is adjoined by a public street. The county joined in a deed of vacation of the

Overlook and Walk to Park, adjoining the Park, pursuant to Virginia law in 1955. Even if the just related acts of the County might be insufficient to show an exercise of dominion over the property, see *Ocean Island Inn*, 220 S.E.2d at p. 250, it is not seriously contested that the property has been used for more than 70 years for recreational purposes by the public and people who live in the Wellington Subdivision community. Answers to interrogatories found in the record disclose numerous statements and affidavits, the veracity of which is not questioned, relating all manner of use of the property as a park almost from the time of its inception until Morauer took his deed. The uses included boating, sailing, fishing, picnicking, the observation of wildlife, and such other related uses to which a park is generally put by the public. The only fault that Morauer finds with this use is that much of the use was by residents of the Wellington Subdivision and is consistent with their claim of an easement appurtenant to their property. But many of the statements and affidavits are not from residents of Wellington Subdivision, although members of the public. And, in any event, residents of that subdivision are also members of the public, and the Virginia court has decided that even the rights of an abutting land owner in an alley are not inconsistent with an easement in favor of the public, as well as his private right of ingress and egress. *Payne*, 133 S.E. at 483. Just as importantly, there is no claim of abandonment, and we take it that so far as this specific point is concerned Morauer does not contest the continuous use of the Park as such from the time of dedication of the plat until he obtained his deed. Also to be mentioned is the fact that the Frosts made no attempt to vacate any part of the plat either before or after their sale of lots. The Frost family exercised no act with respect to dominion or control of the Park from the time of the filing of the plat until their remote family, some 71 years later, executed a special warranty deed to the property.

We are thus of opinion that the acts of Fairfax County have indicated sufficient dominion and control over the property to constitute an acceptance of the Frosts' dedication of the same as a park. We are further of opinion that its use as a park by the public for some 70 years, together with no indication of abandonment and no assertion of dominion over the property by the Frost family for the same period of time, is a sufficient user of requisite character to indicate acceptance of the Frosts' dedication of the Park to public use.

The last question we consider is the question of title to the Park.

The district court decided that the Laughlins did not own the underlying title to the Park although they own the adjoining lots on both sides. It also decided that Morauer was the owner of the property. Both of these holdings, we think were premature.

To begin with, the district court based its decision in favor of Morauer on the res judicata or collateral estoppel effect of the *Edge* case, which we have demonstrated that case did not have in the context present here.

That leaves the question of whether either the Laughlins or Morauer has the underlying title to the lot. As stated, we think that those questions may not be determined at this time.

■ So far as Morauer is concerned, he is not entitled to maintain an action at this time for several reasons. First, he styles his counterclaims as ones in ejectment. In Virginia, "No person shall bring such ejectment action unless he has, at the time of commencing it, a subsisting interest in the premises claimed and a right to recover the same, or to recover the possession thereof, or some share, interest or portion thereof." Va.Code § 8.01–132.[4] Even if Morauer was conveyed some kind of contingent or expectant interest by the deed from the Frost family descendents, he has no right to recover the same because the record

---

**4.** By our reference to ejectment, we do not mean to intimate that Morauer has any other kind of interest he may presently assert.

does not indicate any kind of abandonment of the Park or vacation of the plat, or cessation of use, or the like, to give him any right to assert any future interest he may have in the property.[5] Neither does he have the right to recover the possession thereof for the reason that the Park is impressed with an easement in favor of the public and also because he has no right to the possession of the property in which his right to the underlying title has not been ascertained. Morauer's deed comes from the Frost family descendents who took by inheritance or devise from the Frosts. That chain of title shows on its face that the Park is subject to an easement in favor of the public, and there is nothing of any moment in this record to the contrary. Thus, Morauer also cannot prevail in ejectment on the strength of his own title rather than any weakness in his adversaries'. *Providence Properties v. United Virginia Bank,* 219 Va. 735, 251 S.E.2d 474 (1979). Morauer's title on its face shows that he has neither the right to recover any interest he may later have nor the right to the possession thereof.

■ The Laughlins are in little better shape. There has been no abandonment,

cessation of use, vacation of the plat, or the like. Any rights they may later have in the Park are at best wholly contingent or expectant and, like Morauer's, are dependent upon an event which may never happen. Thus, the decision of the district court so far as it may be construed as holding that the Laughlins have no subsisting interest in the underlying title is correct. But, so far as it may be construed as holding the Laughlins may never have any interest therein, it is incorrect. Like Morauer, the Laughlins simply have no interest in the Park that they may assert at this time. Their claim is premature.

■ It follows that Morauer took no interest that he may now assert by his deed from the Frost family descendents and that he is not entitled to possession of the property. Neither was he entitled to trespass thereupon. Although the holding was not appealed from, it is not remiss to state that so far as the possession of parts of the Park is claimed by the Laughlins by adverse possession, the district court was correct in denying that aspect of the Laughlins' claim and for another reason. We do not think that adverse possession of land subject to a public use may be asserted

5. Successor statutes to the Plat Act of 1887 are yet found, although not in their original form, in the Virginia Code. See Title 15.1, Chapter 11, Article 7 of the 1950 Code, 1981 repl. vol. Without attempting a comprehensive analysis or collection of the numerous amendments since 1887 which may have an effect on this dispute in the future, we note that Va.Code of 1904, § 2510a; Va.Code of 1919, §§ 5219, 5221; Va.Code of 1950, §§ 15–792, 793; Va.Code of 1950, 1962 cum. suppl., §§ 15–967.13, 967.16, 967.19; Va. Code of 1950, 1981 repl. vol., §§ 15.1–478, 482, 483, 484, may bear on the question at hand. Of particular note is that since 1962, Va. Acts of Assembly, c. 407, a plat may be vacated either under present or certain previous code sections whether or not repealed. Va.Code of 1950, § 15.1–484, 1981 repl. vol.

For our purposes, it is sufficient to say that under various statutory provisions commencing in 1887 the recording of a plat in the same or similar manner recorded here may vest either rights of use or passage in the public or even fee simple title in the county, depending on the nature of the use to which the land is dedicated. Similarly, various methods of vacation of plats have been codified, commencing in 1887: by act of the lot owners; by act of the lot owners with the approval of the county; or by county ordinance. The disposition of the property also has from time to time changed, depending on the method of vacation or the statute under which vacated, in some instances going to the lot owners, in others going to the original owners, and sometimes simply not provided for. So, the question of who should own the underlying title, Morauer, the Laughlins, or the county, or someone else depends upon the method of vacation of the plat and the statutory provision under which the plat is vacated, not to mention the common law. Not covered in the statutes, to our knowledge, is any provision for abandonment or simple non use or the like.

In all events, however, until the plat has been vacated or the use thereof abandoned, or the like, under the law of Virginia, either statutory or common, there is nothing to indicate that either Morauer or the Laughlins have any present subsisting interest in the Park capable of being recovered. Any interest in the Park any of them may have is at most some kind of a remote expectancy or contingency based upon an event which has not happened and which may never happen. We have no reason to precisely define whatever kind of interest Morauer and the Laughlins have in the Park and use the word expectancy in the sense found in Blacks Law Dictionary, Fifth Ed.: "It is a possibility for which a party may under certain circumstances properly hope for or expect."

**130**

against the public. See, e.g., *Yates v. Town of Warrenton*, 84 Va. 337, 4 S.E. 818 (1889).

In sum, we decide that the judgment of the Circuit Court of Fairfax County in *Edge* was ineffective as res judicata or collateral estoppel to prevent the prosecution of these cases as to the existence of an easement in favor of the public; that an easement in favor of the public exists, to use the same as a park, over all that lot or parcel of land described as Park, as shown in the land records of Fairfax County, Virginia in Liber N, No. 7, at pages 127, 128 and 129, recorded by the Frosts July 20, 1912; that the underlying title to the land on which the Park is situated is such that neither Morauer nor the Laughlins may assert any interest therein at this time; and that Morauer has no right to the possession of the same or to use the same other than as a member of the public.

The judgment of the district court is vacated and the case is remanded for the sole purpose of its entering its order consistent with this opinion and granting relief. While such relief is to some extent, of course, in the discretion of the district court, it would not seem to us to be amiss to require Morauer to restore the Park to substantially the condition in which he found it.

VACATED AND REMANDED.