Richmond

## ROBERT MIDDLETON, ET AL.

### V.

## BRICE JOHNSTON, JR., ET AL.

January 16, 1981.

Record No. 790035.

Present: All the Justices.

*A. Dow Owens* for appellants.

*William R. L. Craft, Jr. (Craft & McGhee, P.C.,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this appeal of an equity suit involving adjoining landowners, we consider whether a right of way by necessity has been established.

In June of 1973, appellees Brice Johnston, Jr., and M. Teresa S. Johnston, his wife, plaintiffs below, filed a bill of complaint against appellants Robert Middleton and Fred Cook, defendants below. Also sued were Horace Strickler and Harry Strickler, trading as Strickler Brothers. Plaintiffs own a 98-acre parcel of land situated in Pulaski County near Claytor Lake. The parcel lies generally south of Hiwassee and east of the New River.

Plaintiffs alleged that in 1972 Middleton and Cook acquired a tract of land south of and adjacent to plaintiffs' parcel. Plaintiffs asserted that in December of that year Middleton and Cook, through their agent, Strickler Brothers, constructed on the land of plaintiffs a road running from defendants' property north to State Route 692, an east-west secondary road. Plaintiffs charged defendants with trespass, sought an injunction prohibiting further intrusion, and claimed defendants were liable for compensatory as well as punitive damages.

In their answer, Middleton and Cook, denying they had committed any wrong, asserted they had, "either by deed or by usage, a right of way and easement over the lands of [plaintiffs] to reach the lands owned by [Middleton and Cook]." Strickler Brothers' answer contained a general disclaimer of liability.

The cause was referred to a commissioner in chancery in 1973. He conducted hearings annually in January of 1974, July of 1975, and April of 1976. In June of 1977, he filed a report that was based on his search of the land records in the clerk's office of the court below, the testimony, and the exhibits introduced during the hearings.

The commissioner found that previously the litigants' adjoining lands, generally unimproved mountainous territory, had been owned by a common grantor, W. R. Cole. The commissioner reported that in 1887 Cole conveyed a portion of his land to one David S. Forney, a predecessor in title to defendants Middleton and Cook, at which point the Forney land was surrounded by the remaining land of Cole and by property of strangers. The commissioner also reported that in 1894 Cole conveyed the subject 98-acre tract to one L. S. Simpkins, a predecessor in title to plaintiffs. The Forney deed made no reference to easements or rights of way.

The commissioner found, in addition, that during 1918 defendants' predecessors in title constructed what witnesses referred to as a "logging road," the course of which has been generally followed by the road in question. He determined that the logging road was created by virtue of an agreement between the predecessors in title of both plaintiffs and defendants for the removal of timber by the parties and that the logging road had been used by defendants' antecedents, and some other persons, since 1918.

The commissioner concluded that, because utilization of the logging road had been permissive, Middleton and Cook had not established a right of way "by usage," as asserted in their answer. He also decided that because no conveyance, either in evidence or of record in the clerk's office, provided for an easement appurtenant to defendants' land over that of plaintiffs, defendants had not proved they had a right of way "by deed," as asserted in their answer.

The commissioner further concluded, however, that defendants were entitled to an easement by necessity. He found there was clear and convincing evidence that no means of ingress and egress existed from defendants' property except across plaintiffs' land or the land of strangers. He stated that even though "there was some evidence [of] another means of access" to defendants' property and even though

the deed from Cole to Simpkins granted him an easement through Cole's land, there was no evidence "that either of these are in existence or were ever available" to defendants or their predecessors in title. The commissioner also found that clearing and grading of the road, as undertaken by defendants, had not exceeded their rights to use of the easement.

Plaintiffs excepted to that portion of the report which found existence of an easement by necessity and defendants objected to the commissioner's refusal to find that a right of way "by usage" had been established. In a memorandum of law to the chancellor, plaintiffs pointed out defendants had not alleged in their responsive pleadings that they were entitled to an easement by necessity and, in addition, contended the evidence was insufficient to establish such a right. Plaintiffs' attorney asserted that because necessity was not pleaded, he had not presented evidence on that issue and a finding on that subject had taken him by surprise. As a result, the trial court permitted additional evidence to be taken on necessity.

The fourth hearing was conducted by the commissioner in April of 1978. One of the plaintiffs and two plaintiffs' witnesses testified. The commissioner filed an additional report, concluding that the supplemental evidence did not alter his original determination that a way of necessity had been established.

He found there was "another roadway" leading from a second State road, Route 693, across property of one Dickerson to defendants' property. The Dickerson land lies roughly west of and adjacent to defendants' property. At this location, Route 693 is a generally north-south secondary road running parallel, on the west side, to tracks of the Norfolk & Western Railway Company, which are just west of the Dickerson property. This other "roadway," the commissioner found, has been "used by unknown parties for a number of years and appears to have been used by predecessors in title to the defendants' land." But the commissioner also said "[n]o evidence was presented that defendants had a granted right or a right by usage across the Dickerson property."

Plaintiffs excepted to the additional report contending, *inter alia,* the commissioner had misplaced the burden of proof. Subsequently, the chancellor sustained plaintiffs' exceptions. In a memorandum opinion the court below ruled the burden was upon defendants to prove they have no other access to their property, and was not upon plaintiffs to prove that defendants have other access to their land in addition to the road in question over property of plaintiffs

to Route 692. The trial court held that defendants failed to show "their land never had a right of way by prescription or otherwise out to Public Road 693 or that, if at one time they did have such access, the same had terminated."

Thereafter, the parties having stipulated damages, the final decree was entered in October of 1978. In that order, the trial court disapproved the commissioner's reports as to the easement-by-necessity question and sustained them in all other respects. Defendants were enjoined from further encroachment and use of plaintiffs' property. In accordance with the stipulation, plaintiffs were awarded $500 in damages against all defendants as a result of the trespass and road construction. In addition, the final order assessed the taxable costs of the litigation, including the commissioner's fee, against defendants Middleton and Cook, to whom we awarded this appeal. Strickler Brothers has not sought review of the judgment below.

■ Even though defendants on appeal contend the trial court erred in failing to find that the evidence established a right of way over plaintiffs' land by "usage" and "adverse possession," they do not vigorously argue in support of that position, and properly so. All of the evidence indicated permissive use of the logging road at the time of and after its creation in 1918. Thus, the dispositive question before us, as we have already indicated, is whether defendants acquired a right of way by necessity over plaintiffs' tract as a means of ingress and egress to and from State Route 692.

■ Settled principles pertinent to this case should be reviewed. A right of way by necessity arises from an implied grant or implied reservation. Stated differently, it is an easement implied upon a conveyance of real estate. To establish such a right, the alleged dominant and servient tracts must have belonged to the same person at some time in the past. The right is based upon the idea that whenever one conveys property, he conveys that which is necessary for the beneficial use of the land and retains that which is necessary for the beneficial use of the property he still possesses. *Fones* v. *Fagan,* 214 Va. 87, 90, 196 S.E.2d 916, 918 (1973); *Keen* v. *Paragon Jewel Coal Co.,* 203 Va. 175, 178, 122 S.E.2d 543, 546 (1961); *Jennings* v. *Lineberry,* 180 Va. 44, 48, 21 S.E.2d 769, 771 (1942); 1 *Minor on Real Property* § 98 at 134 (2d ed. F. Ribble 1928).

■ Thus, in the case of an implied grant, an easement is acquired by a grantee over the grantor's property when the land conveyed is either entirely surrounded by property of the grantor or else is

bordered in part by the land of a stranger and in part by lands of the grantor. Under either situation, the grantee obtains a way of necessity over the grantor's property because otherwise the land conveyed would be inaccessible and useless. *Minor* at 133.

In Virginia, contrary to the rule in some other jurisdictions, a showing that the way is reasonably necessary to the enjoyment of the dominant estate is all that is required; some courts hold that absolute physical necessity must be established. *Jennings* v. *Lineberry,* 180 Va. at 48, 21 S.E.2d at 771. And such reasonable necessity must be proven by clear and convincing evidence. *Fones* v. *Fagan,* 214 Va. at 90, 196 S.E.2d at 918. Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and *unequivocal. Fred C. Walker Agency* v. *Lucas,* 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).

Further, a way of necessity will not be established if there is another way of access, although less convenient and will involve some labor and expense to develop. *Chaiken* v. *Harry J. O'Meara Tile Co.,* 212 Va. 510, 513, 184 S.E.2d 746, 749 (1971).

As we move to the issues in this case, there is no dispute that at one time the respective properties of these litigants were owned by a common grantor and that, after the initial conveyance, the land of defendants' predecessors in title was surrounded by the remaining property of the original grantor and by the lands of strangers. Also, it is uncontroverted that subsequently the original grantor disposed of his remaining land, a portion of which is now owned by plaintiffs. In addition, the evidence is clear that a passageway in the form of a logging road was open and used for a number of years for the benefit of the alleged dominant tract over the alleged servient tract. Also, the facts show that some outlet from defendants' land is reasonably necessary. Thus, all of the essential elements for establishment of a way of necessity, under the circumstances of this case, are present unless the dominant tract has another means of access, though less convenient and more expensive to develop. Consequently, the ultimate question in this case involves the existence of such other means of access in fact and law.

At the threshold, an issue arises as to the placement of the burden of proof on the subject of access. Defendants contend the trial court erred in requiring them to prove they had no other means

of access to their property. Arguing they were forced to prove a negative, defendants say "the non-existence of something is impossible to prove." We think the chancellor correctly fixed the burden.

We have previously said, inferentially, that the burden to prove lack of other means of ingress and egress rests upon the party seeking to establish a right of way by necessity, *see Chaiken* v. *Harry J. O'Meara Tile Co.,* 212 Va. at 513, 184 S.E.2d at 749; now, we explicitly so hold. Indeed, to decide otherwise would be to say that the party having the affirmative of an issue does not have the burden to prove each and every essential element of his case. Such a ruling would be illogical and contrary to settled principles of trial procedure.

But, in an alternative argument, defendants contend that if the threshold issue is decided against them, they have nevertheless proved by clear and convincing evidence that there is no other means of access to their property except over the land of plaintiffs.

This brings us to the evidence again, and to a consideration of our standard of review of the factual findings below under the procedural posture of this case. As to the issue of a way by necessity, the chancellor disapproved the reports of the commissioner in chancery. Consequently, we must review the evidence on that subject and ascertain whether, under a correct application of the law, the evidence supports the finding of the commissioner or the conclusions of the trial court. *First National Bank of Martinsville* v. *Cobler,* 215 Va. 852, 854, 213 S.E.2d 800, 802 (1975).

Because of the manner in which the issues were initially framed, the evidence presented during the first three hearings mainly dealt with the origin of the logging road, the actions of the inhabitants of the respective parcels with relation to it, the manner of the early use of the road, the purpose of the original use, and the conduct of the defendants since December of 1972 in expanding the size of the original way to accommodate vehicular traffic.

During those three hearings, however, the defendants offered evidence which was pertinent to the issue of other access to defendants' property. For example, Thornton Allison, apparently a life long resident of the immediate area whose family had owned defendants' property, testified the logging road "was the only way we had of getting in there," referring to defendants' land. Allison, born in 1906, testified repeatedly that he knew of no other road or means of access to defendants' land. Buster Quesenberry, born in 1901, testified he

lived as a tenant, farming and cutting timber, for about three years beginning in 1930 on the property now owned by defendants. He said the logging road was "the only way you can get in there," and there was no other road into defendants' property at that time.

During the fourth hearing, plaintiff Brice Johnston, Jr., presented a sketch depicting the disputed way running from defendants' land north through plaintiffs' property to Route 692 and another road leading from defendants' land west through the Dickerson tract to Route 693. Johnston also introduced into evidence a series of 13 photographs taken by him nine days before the fourth hearing in the presence of Dora Simpkins, who had previously testified for plaintiffs. These photos were taken along the route of the other roadway at regular intervals leading in a generally westerly direction from a point on defendants' property where this "other roadway" intersected the logging road in question. They show a clearly defined road from defendants' property through mountainous terrain to the railroad right of way and Route 693.

Mrs. Simpkins, born in 1905, and her husband conveyed the subject parcel to plaintiffs in 1964. She had continued to reside on the property to the time of the hearings, having lived there "on and off" since 1912. She confirmed the existence of the "other roadway" from Route 693 into defendants' property as shown in the photographs. She testified the road "was there when I come to this country and that was sixty-six years ago." She also said the way "used to be a right good road" and was presently a "very old roadbed" which had not been used for 15 or 16 years except by "people just walking on it, pleasure tripping." She also testified both roads were used as means of access to defendants' property, one out to Route 692 and the other out to Route 693. She stated that actually the two ways constituted one continuous road between Routes 692 and 693 through plaintiffs', defendants' and Dickerson's property.

Plaintiffs also called the Chief Forest Warden for Pulaski County who testified to the existence of the "other" road.

As found by the commissioner in his second report, the evidence was clear of another roadway leading from Route 693 across the Dickerson property into defendants' land which, according to the commissioner's finding, had been used by unknown parties for years and apparently "by predecessors in title to the defendants' land." Under such circumstances, it was incumbent upon defendants in discharging their ultimate burden to show by clear and convincing evidence that, as the chancellor said, the owners of their land never

had a right of way by prescription or otherwise out to Route 693 or that, if such right existed at one time, it had since been terminated. While defendants offered evidence that the logging road was "the only way" to and from defendants' land, such testimony was insufficient as a matter of law, in the face of the evidence of another way, to produce in the mind of the trier of facts a firm belief as to defendants' allegation of lack of other access.

In *Chaiken* v. *Harry J. O'Meara Tile Co., supra,* a similar situation existed as to access. We held O'Meara had not sustained the required burden to prove an easement by necessity over property of Chaiken. The evidence showed former access for over 20 years from O'Meara's land to Black Lick Road by another way that was either on railroad property, on the Chaiken tract, or partly on both. We said, "No explanation or proof was offered by O'Meara, upon whom the burden rested, to show when this means of ingress and egress had been terminated if it had, in fact, been terminated." 212 Va. at 513, 184 S.E.2d at 749.

For these reasons, we hold the trial court correctly decided defendants failed to sustain their burden to prove by clear and convincing evidence a right of way by necessity over plaintiffs' land. Accordingly, the decree appealed from will be

*Affirmed.*