## Richmond

ALFRED BROWN, ET AL.

V.

TAZEWELL COUNTY WATER AND SEWERAGE AUTHORITY

September 9, 1983.

Record No. 801634.

Present: All the Justices.

*S. Strother Smith, III,* for appellants.
*Roger W. Mullins (James R. Henderson; Mullins and Mullins, P.C.,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether a road shown on a recorded plat was so dedicated to public use as to permit the installation of utility lines therein. Appellants are the owners of all the lots, except lot 7, in the "College View Addition," near Wardell, in Tazewell County. The Tazewell County Water and Sewerage Authority (Authority) brought suit against them for declaratory judgment and injunctive relief, alleging that they were resisting and obstructing its efforts to construct water and sewer lines in a forty foot wide right-of-way shown as a street on a recorded plat of their subdivision. The owners contended that the road had never been dedicated, accepted, or otherwise acquired for public use. The court entered a decree declaring that the roads shown on the plat were public and that the Authority had the right to construct and operate water and sewer systems therein. It enjoined the appellants from interfering with the Authority's operations. Upon a review of the record, we conclude that this ruling was error.

Beverly Horne and Emma Horne, his wife, owned a tract of land which they divided into lots of various sizes. A plat of the subdivided land was recorded among the Tazewell County land records in 1974. They then conveyed the lots to the appellants by various deeds. All the deeds referred to the plat, but only one deed relied upon it for a description. The others contained metes and bounds descriptions. The plat showed a forty foot wide right-of-way through the subdivision, labelled "40.0′ street," to which a twenty foot extension connected. It furnished all the lots access to

State Route 603. The deeds granted to the lot owners "along with others, a 40 ft. easement or right-of-way . . . as shown on the aforesaid plat leading from Highway # 603 to the property herein conveyed."*

Tazewell County has a subdivision ordinance adopted pursuant to Va. Code tit. 15.1, ch. 11, art. 7 ("Land Subdivision and Development"). The provisions of this article specify certain contents of such ordinances and require counties and municipalities to adopt them. Code § 15.1-473 provides that no land shall be subdivided unless a plat is first made and recorded pursuant to the ordinance and article 7, that no plat shall be recorded unless it is first approved by the local commission or by the governing body or its agent, and that no subdivided land may be sold or transferred until such plat has been approved and recorded. Penalties are provided for grantors who convey land in violation of these provisions and for clerks who admit unapproved plats to record. Code §§ 15.1-475, -476, and -477 specify prerequisites for approval of such plats. Code § 15.1-478 provides in pertinent part:

> The recordation of such plat shall operate to transfer, in fee simple, to the respective counties and municipalities in which the land lies such portion of the premises platted as is on such plat set apart for streets, alleys or other public use and to transfer to such county or municipality any easement indicated on such plat to create a public right of passage over the same . . . .

It is conceded by the Authority that the plat in question here failed to meet the requirements of these provisions in a number of particulars: it is not certified or signed by a certified professional

---

* The deeds also reserved to "the grantors herein, their successors in title, and the present or any future owner or owners of any lots in this or the adjoining subdivision, the right and easement to construct, install, operate and maintain water pipe lines, sewer lines, telephone lines and electric power lines in, on, over and across the land hereinabove conveyed, together with all necessary rights of ingress and egress." The Authority does not contend on appeal that it acquired its rights by virtue of this reservation. Rather, it relies on the trial court's finding that the road in question is a dedicated public road. The question of private rights, if any, accruing to it by virtue of the reservation was neither briefed nor argued on appeal, nor was an adequate record presented to enable us to decide it. Accordingly, we shall not consider this question. Rules 5:21, 5:27, 5:37 and 5:39. *See also City of Staunton* v. *Cash,* 220 Va. 742, 746, 263 S.E.2d 45, 48 (1980); *Cooley* v. *Cooley,* 220 Va. 749, 753 (n.), 263 S.E.2d 49, 52 (n.) (1980).

engineer or land surveyor and, most significantly, was recorded without having been submitted to or approved by the local commission, the governing body, or its agent.

The appellants testified that they asked the Tazewell County Board of Supervisors to request the Virginia Department of Highways to take over the maintenance of the road, but were refused on the ground that it was not a public road, and before it could be considered for state maintenance, all parties in interest would have to "give the State a deed to this road." The owners then surfaced and maintained the road at their own expense. They further testified to continuing, but fruitless, efforts to persuade the county school board to send a school bus up the road daily to pick up the half busload of school children who lived there and who otherwise were required to walk to Route 603 to meet the bus. This request, they were told, was refused because school buses could not lawfully be operated over private roads. There was no evidence of any formal acceptance of the road by the governing body, or of any implied acceptance by the conduct of any public official prior to the Authority's entry to construct water and sewer lines.

In 1979, Western Coal Corporation, the owner of Lot 7, desiring to enlarge a small trailer park it was then operating, requested the Authority to provide water and sewer service to the lot. The Authority approved a project which would furnish service to lot 7, but to no other lots, and accepted the bid of a contractor for the work. The appellants resisted entry by the contractor's crew in June 1980. The Authority then brought this suit, which resulted in a decree in its favor.

Dedication, at common law, was a grant to the public, by a landowner, of a limited right of user in his land. No writing or other special form of conveyance was required; unequivocal evidence of an intention to dedicate was sufficient. Until the dedication was accepted by the public, it was a mere offer to dedicate, no matter how finally expressed. Prior to acceptance, the offer to dedicate imposed no responsibilities upon the public and was subject to unilateral withdrawal at any time by the landowner. 2 *Minor on Real Property* 1696-1702 (F. Ribble 2d ed. 1928). *See also Bradford* v. *Nature Conservancy,* 224 Va. 181, 198-99, 294 S.E.2d 866, 875 (1982). Acceptance could be formal and express, as by the enactment of a resolution by the appropriate governing body, or by implication arising from an exercise of dominion by

the governing authority or from long continued public user of requisite character. *Ocean Island Inn* v. *Virginia Beach,* 216 Va. 474, 477, 220 S.E.2d 247, 250 (1975). If the land was dedicated to a particular public use and accepted, the public authorities were confined to that use and those necessarily attendant upon it or incidental thereto. 2 *Minor on Real Property, supra* at 1701. *See Anderson* v. *Water Company,* 197 Va. 36, 41, 87 S.E.2d 756, 760 (1955).

■ Against this background, the General Assembly, beginning in 1887, enacted a series of laws relating to dedications of streets and other public areas within platted, recorded subdivisions. Acts 1889-90 ch. 45, p. 35, Va. Code 1919 § 5219, provided that the acknowledgement and recording of such a plat would operate to create a public easement or right to passage over streets shown on the plat. Nevertheless, we consistently held that although such "dedication by map" was irrevocable by the dedicator, the rights of the public were merely inchoate, and that the dedication was not complete until accepted by competent public authority. *E.g., Payne* v. *Godwin,* 147 Va. 1019, 1026, 133 S.E. 481, 483 (1926).

That statute was replaced in 1946 by the Virginia Land Subdivision Law (Acts 1946, ch. 369), which required that a subdivision plat be prepared by a licensed surveyor or civil engineer, that it be acknowledged by the owners, and that it be approved by the local governing body before recordation. It then provided that the recordation of such a plat would operate to transfer the streets shown thereon to the county or city in fee simple. That statute was replaced in 1962 by the present article 7, containing Code § 15.1-478, quoted above.

Article 7 also includes Code § 15.1-479 which states: "Nothing herein shall be construed as creating an obligation upon any municipality or county to pay for grading or paving, or for sidewalks, sewers, curb and gutter improvements or construction." The Authority argues that this provision protects the county from the consequences of a unilateral dedication to which it had not agreed, rendering harmless the dedicator's failure to obtain governmental approval before recording the plat. We disagree. As we pointed out in *Ocean Island Inn,* 216 Va. at 477, 220 S.E.2d at 250, a completed dedication imposes upon the public not only the burden of maintenance, which is relieved by Code § 15.1-479, but also of potential tort liability, which is not. Because mere recordation of a properly approved subdivision plat now vests fee simple title in the

governing body as to all streets shown thereon, the requirement of prior approval by competent public authority is indispensable. It subsumes and replaces the common-law requirement of acceptance after dedication. It is the only protection the public has against liability thrust upon it, without its knowledge or consent, by a developer. We hold that no statutory dedication occurs unless the requirements of the applicable statutes and ordinances have been complied with.

The Authority argues further that even in the absence of a statutory dedication, a common-law dedication was completed as to the road in question. It contends that the recordation of the plat constituted an offer to dedicate, and that its own entry for the purpose of constructing water and sewer lines constituted an acceptance by implication. It relies upon *Greenco Corp.* v. *Virginia Beach,* 214 Va. 201, 198 S.E.2d 496 (1973).

In *Greenco,* we considered the question of acceptance by implication of a street shown on two subdivision plats, recorded in Virginia Beach in 1900 and 1908. Neither plat met the then statutory requirements for dedication, but both were treated as common-law offers to dedicate, requiring acceptance for completion. We held that an acceptance existed, based upon a formal resolution as to a part of the street and long public user of other parts coupled with repeated acts of dominion over the street exercised by the city and its predecessors. Among the latter were the grant of an electric railway franchise, the construction of a concrete "boardwalk," the installation of lighting fixtures, and the franchising of a utility company to lay gas pipelines within the street. We held that these acts, coupled with the partial formal acceptance, constituted sufficient evidence to support the trial court's finding of an implied acceptance of the street by the governing body.

The Authority's reliance on *Greenco* is misplaced for two reasons. First, the Authority is neither the governing body of the county nor the Virginia Department of Highways. It lacks the power to accept streets on behalf of the public or to commit other public bodies to pay the costs of construction, maintenance, or potential tort liability. Second, the Authority seeks to employ as evidence of acceptance a use which differs from the offer. As stated above, a common-law dedication is an offer to give the public only a limited user in the landowner's property. For a street, the offer is merely that of a public right of passage. An acceptance, to be valid, must accept the right offered, not a different right. *See An-*

*derson* v. *Water Company,* 197 Va. at 36, 87 S.E.2d at 756. The Authority could not, on the one hand, fail to accept the only offer made, a public right of passage with all of its attendant liability, and, on the other hand, purport to accept something never offered to the public, the right to lay water and sewer lines.

In *Greenco,* the governing body's grant of a franchise to a utility company to lay a gas pipeline in the street was viewed, along with other acts of dominion, as circumstantial evidence that the governing body had impliedly accepted the dedicator's offer, was willing to assume the attendant burdens, and now regarded the road as a public street. The gas company's actual construction work was not treated as evidence of acceptance by the governing body. Here, by contrast, the evidence shows no acts of dominion or implied acceptance by the governing body, but rather, an express refusal of the offer.

Finding neither a statutory nor a common-law dedication, we will reverse the decree appealed from, dissolve the injunction, and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*