## JOSEPH E. HURD, ET AL.

## V.

## BENJAMIN W. WATKINS, ET AL.

Record No. 880099

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

* Justice Thomas prepared and the Court adopted the opinion in this case prior to the effective date of his resignation, November 1, 1989.

*Robyn Hylton Hansen (Conway H. Sheild, III; Jones, Belchman, Woltz & Kelly*, on briefs), for appellants.
*James H. Smith* for appellees.

Justice Thomas delivered the opinion of the Court.

In this appeal, we decide whether a parcel of land marked "Reserved" on a subdivision plat was dedicated to the public either when the plat was recorded or under common law principles. Further, we decide whether landowners with property which abuts the reserved parcel proved that they were entitled to a way of necessity across that parcel.

## I

This suit began in June 1984, when Benjamin W. Watkins, Frank H. Watkins, Elsie W. Poole, Vernie Lee W. Ellswick, and Francis Watkins (hereinafter collectively referred to as the Watkins) sued the record owners of the parcel in question: Joseph and Annette Hurd (the Hurds) and Peter and Peggy Carr (the Carrs). The Watkins also sued, among others, Percy and Edythe Smith (the Smiths), trustees in dissolution of Edbar Estates, Inc.

(Edbar). Edbar had developed the subdivision in which the disputed parcel is located.

As indicated, the object of the Watkins' suit was to secure a right to use the reserved parcel as access to their adjoining property, which they claimed was landlocked. The matter was referred to a commissioner in chancery who heard testimony *ore tenus*, considered depositions, and considered documentary evidence. The commissioner ruled that the Watkins had failed to prove that the parcel had been dedicated to the public and that they had failed to meet their burden of proof to establish a right of way of necessity across the parcel in question. The Watkins filed exceptions to the commissioner's report. The trial court, as chancellor, without taking further evidence, considered the commissioner's report and sustained the Watkins' exceptions. The chancellor held that the parcel in question had been dedicated to the public and that the Watkins had met their burden of proving a right to a way of necessity across the reserved parcel. This appeal followed. We disagree with the trial court; therefore, we will reverse.

■ Because the chancellor disapproved the commissioner's findings, " 'we must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court.' " *Sprott* v. *Sprott*, 233 Va. 238, 240, 355 S.E.2d 881, 882 (1987) (quoting *Hill* v. *Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984)). Moreover, even though the trial court disapproved the commissioner's findings of fact, we must, nevertheless, give due deference to the commissioner's findings in those areas where the commissioner saw, heard, and evaluated the witnesses at first hand while the trial court did not.

## II

The facts are as follows: The land which comprises the Holloway Forrest subdivision (including the disputed parcel) and the property owned by the Watkins, which abuts the disputed parcel, was once owned by Jeremiah Watkins. Before the property was divided, it was served by a road which went to Jeremiah's house. That road did not, however, connect with the parcel which ultimately came into the possession of the Watkins. The Watkins acquired their property from their father who had in turn acquired it from his father, Jeremiah. The Watkins acquired a landlocked parcel. In 1964, Edbar acquired the land for the Holloway Forrest

subdivision from Robert J. Watkins who in turn was a successor in Jeremiah's chain of title. There was no physical evidence on the ground of an easement of ingress or egress across any portion of the Holloway Forrest subdivision for the benefit of the land owned by the Watkins.

Edbar prepared a subdivision plat dated August 24, 1964, which was approved by the Poquoson town manager and recorded on January 29, 1965. The disputed property is located between lots 31 and 32 on Sir Ralph Lane. The parcel is 50 feet wide and 138 feet long. The south end of the parcel abuts Sir Ralph Lane, a street platted and constructed in the subdivision. The north end of the parcel abuts the property owned by the Watkins. The south end of the parcel is bounded, on the plat, by a heavy, black, unbroken line which comprises part of the boundaries of Sir Ralph Lane. Just inside the heavy, black, unbroken line there are markings on the parcel showing corner curves. In general, the parcel has the appearance, on the plat, of the stub of a street which stops at the property line of the subdivision. However, the parcel was never physically developed as a street. Further, a licensed land surveyor testified, without contradiction, that "the heaviness of the lines on the existing right of way, as shown on that plat, would lead [him] to think it was not an offer of dedication of that particular piece of land." He went on to say that, "[i]t is not part of the roadway system for Holloway Forrest."

From 1965 to 1977, neither the Town of Poquoson nor its successor, the City of Poquoson (hereinafter collectively Poquoson) taxed the reserved parcel. However, in 1977, Poquoson's commissioner of revenue began taxing the parcel, sending the bills to the Smiths for Edbar.

In 1981, the Smiths, through counsel, asked the Poquoson city attorney whether the property actually belonged to the Smiths, who had been under the impression that the property belonged to Poquoson. In a letter dated April 2, 1981, the then city attorney wrote as follows:

It would appear from the history of this subdivision that the developer validly reserved unto himself this portion of land. I would point out that this is not a lot and cannot be built upon. . . . However, the developer could sell a portion of this land or all of the same to the owners of Lots 31 or 32.

> I would imagine he could sell it to anyone else, but nothing could be constructed upon the same.

> Mr. Smith is also liable for taxes on this portion of property for a period extending back at least 10 years. I am sending a copy of this letter to the Commissioner of Revenue and the City Manager so they may have reference to the same.

The city attorney had based his legal conclusion on the last sentence of Code § 15.1-478 (as that statutory provision stood as of July 1, 1964); the pertinent language was that "nothing contained in this article shall affect any right of a subdivider of land heretofore validly reserved." By letter dated August 11, 1981, the then assistant city manager also implicitly acknowledged that Edbar owned the disputed parcel.

In September 1981, the Hurds purchased lot 31, which abutted the disputed parcel. The garage on their home was so situated that a vehicle could not enter or exit without crossing the reserved parcel. On April 20, 1983, the Smiths conveyed the reserved parcel to the Hurds. The Hurds then sold a portion of the parcel to their neighbors, the Carrs, who owned lot 32 which abutted the other side of the reserved parcel. On August 18, 1983, Poquoson approved a boundary line adjustment between the Hurds and the Carrs. This adjustment was recorded on January 5, 1984.

On April 17, 1984, the Hurds executed a contract to sell lot 31. However, the Watkins filed a *lis pendens* against the property and the Hurds lost the sale.

### III

#### A.

The first issue is whether the Watkins have a right to use the reserved parcel on the ground that it was dedicated to the public when the subdivision plat was recorded in January 1965. The Watkins argue that a statutory dedication occurred for the following reasons: (1) that at the time the plat was recorded Code § 15.1-478 provided that recordation operated to transfer in fee simple to the local government "such portion of the premises platted as is on such plat set apart for streets, alleys, or other public uses and to transfer to such county or municipality any easement indicated on such plat to create a public right of passage over the

same" and (2) that Poquoson subdivision ordinance Section 26-34 provided that "[s]treets shall be provided as necessary to provide connections to all existing or platted streets in adjoining areas and to provide access to any such areas as may not be already provided with existing or platted streets."

The Watkins argue that the effect of these two provisions is that the subdivider was bound by law to provide a way to their land because their land comprised an area not "already provided with existing or platted streets." They argue further that the disputed parcel looks like a street, could not be used as anything but a street, and thus, under the terms of Code § 15.1-478 was, on the plat, "set apart" for a street. They argue, in addition, that Robert Watkins who sold the property to Edbar testified that he had, as Poquoson's attorney, drafted the subdivision ordinance and that in Robert Watkins' view, Edbar was required to provide access to the Watkins' property and, moreover, that it was Robert Watkins' intent that such access be provided to his cousins.

The Watkins also pointed out that dedication of the property is supported by the fact that it was not taxed for a twelve year period. Further, they rely on the facts that the Smiths did not know the parcel belonged to the developer; that a former city manager testified that he had thought the property belonged to the City; and that the former city manager had, during his tenure, advised several prospective purchasers that the land was not for sale.

The commissioner rejected the Watkins' argument. He was of opinion that a parcel on a plat marked "Reserved" does not comply with the requirement of Code § 15.1-478 that items to be transferred in fee to the local government first must be "*set apart* for streets, alleys, or other public uses." (Emphasis added.)

Further, the commissioner concluded that, with regard to Poquoson subdivision ordinance § 26-34, there was simply no evidence that the plat approving authority "deemed it necessary to provide a street or road to" the Watkins' property. The commissioner found it significant that the developers were required to extend Sir Ralph Lane to the eastern boundary of the subdivision, where that street stopped abruptly at the edge of the adjoining property. In light of those circumstances, the commissioner wrote "that if the plat approving agent thought that it was *necessary* to provide a street connection to provide access to any of the property on the northern side of the 'Reserved' parcel, it would have

done so *just as it did for the extension of Sir Ralph Lane.*" (Emphasis in original.)

The chancellor agreed with the Watkins and held that there had been a statutory dedication of the disputed parcel when the plat was recorded in 1965. We disagree.

In *Brown v. Tazewell County Auth.*, 226 Va. 125, 306 S.E.2d 889 (1983), we held that because a proper recordation of a subdivision plat vests the local government with fee simple ownership of streets shown on the plat as well as thrusts various burdens of maintenance and liability upon the local government, "no statutory dedication occurs unless the requirements of the applicable statutes and ordinances have been complied with." *Id.* at 131, 306 S.E.2d at 892. In our opinion, the concept of reservation is opposed to the concept of dedication. To reserve is to retain or keep. To dedicate is to present or surrender. A parcel which is drawn with some of the characteristics of a street yet has the end which would connect with another subdivision street closed off in bold ink with the notation "Reserved" is not a parcel set apart as a street within the meaning of Code § 15.1-478.

Moreover, Code § 15.1-478 contemplated and permitted reservations of properties within subdivisions. The last line of that provision read as follows: "but nothing contained in this article shall effect any right of a subdivision of land heretofore validly reserved." The Watkins argue that the foregoing language applies only to reservations made by a subdivider prior to the enactment of Code § 15.1-478. Thus, they argue that because the subdivision here under review was not recorded until January 1965, nothing contained in that subdivision could be reserved.

The Watkins' argument makes very little sense. First, the provision does not say that it applies only to reservations made prior to the enactment of the statutory provision. Second, similar language remains in the Code today almost 25 years after the Holloway Forrest subdivision plat was recorded, which suggests that the reservation language is meant to have continued vitality. See Code § 15.1-478 (Acts 1978 c. 590). The correct reading of the provision is that reservations of property made prior to submitting the plat and invoking the statute are not prohibited.

We hold that the chancellor erred in ruling that the reserved parcel had been dedicated to the public pursuant to statute.

## B.

We turn now to the question whether there was a common law dedication of the disputed parcel. A "common law dedication" requires both an offer of dedication and its acceptance by the local government either formally or by implication. *Brown* v. *Tazewell County Auth.*, 226 Va. at 129, 306 S.E.2d at 892; *Ocean Island Inn* v. *Virginia Beach*, 216 Va. 474, 477, 220 S.E.2d 247, 250 (1975).

The Watkins' argument in favor of the existence of a common law dedication fails at the threshold, because there was no offer of dedication of the disputed parcel. This is so because the parcel was marked "Reserved." Just as that designation is contrary to the statutory requirement that a parcel be "set apart" as a street before it can be transferred to the locality on the recordation of a plat, that same designation, on the facts of this case, negates the concept of an offer. It is simply inconsistent to say on the one hand that the parcel here in dispute was reserved but that at the same time it was offered for purposes of common law dedication. Just as reserved and dedicated are opposing concepts, so are reserved and offered.

## C.

The Watkins also claimed rights to use the reserved parcel under the principles concerning partial acceptance of property offered for dedication. We discussed partial acceptance in *Ocean Island Inn*, a case in which the central issue was whether the locality had accepted a common law offer of dedication. There we held that

> where a governing body has accepted part of the streets appearing on a recorded plat and no 'intention to limit the acceptance' is shown, such partial acceptance constitutes acceptance of all of the streets, provided the part accepted is sufficiently substantial to evince an intent to accept the comprehensive scheme of public user reflected in the plat.

*Id.* at 479, 220 S.E.2d at 252. The chancellor relied on this principle to rule that because Poquoson had exercised dominion over the other streets in the Holloway Forrest subdivision, it therefore exercised dominion over the reserved parcel.

■ The doctrine of partial acceptance is inapplicable in this case. That doctrine assumes a situation where a subdivision plat contains several streets. In that situation, if the locality accepts enough of the platted streets without saying that its acceptance is limited, then it will be deemed to have accepted all. But here the very question to be decided is whether the reserved parcel is a street. Thus, to apply the doctrine of partial acceptance to this situation would be tantamount to saying that the reserved parcel *is* a street because the locality accepted streets in the subdivision. The one does not follow from the other.

### D.

■ The Hurds submit that the chancellor erred in ruling that the boundary line adjustment reached between the Hurds and the Carrs concerning lots 31 and 32 was void because the reserved parcel had not been properly vacated or abandoned. The basis for the chancellor's ruling, in that regard, was that the reserved parcel had been dedicated to the locality and that the dedication had to be vacated before there could be a boundary adjustment. We have heretofore held that the reserved parcel was not dedicated to Poquoson. Thus, it follows that there was no need to vacate the dedication. We hold that the chancellor erred in declaring the boundary line adjustment invalid.

### IV

We turn now to the question whether the Watkins met their burden of proof to show that they were entitled to a way of necessity across the property belonging to the Hurds and the Carrs. In deciding this issue, the commissioner quoted extensively from *Middleton v. Johnston*, 221 Va. 797, 273 S.E.2d 800 (1981), to establish the elements of proving a right to a way by necessity as well as the placement of the burden of proof and the required level of proof.

■ The commissioner stated that only one element of proof was in doubt and that was whether the Watkins had proved the lack of other reasonable means of access to their property. The commissioner pointed out that the Watkins property was surrounded by nine parcels of land to the west, seven lots in Holloway Forrest on the south and east, and the land of relatives on the north. Upon review of the evidence, the commissioner concluded as follows:

The testimony presented to this Commissioner was insufficient to produce a firm belief as to the [Watkins'] allegation of lack of other access in light of the law in Virginia as set forth in *Middleton* and *Chaiken* [v. *Harry J. O'Meara Title Co.*, 212 Va. 510, 513, 184 S.E.2d 746, 749 (1971)] and the evidence in this case. For these reasons, this Commissioner holds that the [Watkins] have failed to sustain their burden of proof by clear and convincing evidence that a right-of-way by necessity presently exists over the [Hurds' and the Carrs'] land.

■ The trial court reached the opposite conclusion on the same evidence though without the benefit of seeing and hearing any of the witnesses give live testimony on the issue. The trial court's ruling on the matter reads in pertinent part as follows:

The Court finds that there is clear and convincing evidence that a way of necessity exists. Three witnesses testified that there was no access to a public way and that the [Watkins' land] was landlocked. . . . The access, by way of necessity, to which the landowner is entitled, is a legal right of way of ingress and egress over the land of another. The [Watkins] have absolutely no legal right to pass over the property of any of the other adjoining property owners. . . . Admittedly, it would be lawful for the Court to grant that right over some other part of the Holloway Forrest Subdivision, but in this equity case, *the only logical and fair access should be over that part of the property which was, in fact, reserved for access.*

(Emphasis added.) We think the chancellor erred in ruling that the Watkins had established a right to a way of necessity across the Hurd's and the Carr's property. As the emphasized language indicates, the chancellor was affected in his decision by his erroneous view that the disputed parcel had been "Reserved for access."

■ In *Middleton*, we set forth the rules which adhere in cases of this kind. *See also, American Small Business Investment Co.* v. *Frenzel*, 238 Va. 453, 383 S.E.2d 731 (1989). A person claiming a way of necessity must prove that, at some time in the past, the dominant and servient estates belonged to the same person. 221 Va. at 802, 273 S.E.2d at 803. The claimant must prove that the way is reasonably necessary to the enjoyment of the dominant es-

tate. *Id.* at 803, 273 S.E.2d at 803. The claimant must prove the *lack* of other means of ingress and egress. *Id.* at 804, 273 S.E.2d at 803. *See Chaiken* v. *Harry J. O'Meara Tile Co.*, 212 Va. 510, 513, 184 S.E.2d 746, 749 (1971). The claimant must meet its burden of proof through clear and convincing evidence. 221 Va. at 803, 273 S.E.2d at 803.

The question of a way of necessity in favor of the Watkins across the Hurds' and the Carrs' property did not become important until the commissioner first concluded that the disputed parcel had not been dedicated to public use. Once that decision was made, however, the disputed parcel legally and logically had no more relationship to the landlocked parcel than any of the other land which was originally owned by Jeremiah and which bordered the landlocked parcel on any of its sides.

Thus, when the Watkins sought a way of necessity through the Hurds' and the Carrs' property and no other, they were bound to prove why their right of way should be located where they urged as opposed to being located elsewhere. There is not a shred of evidence, in the record, to suggest why the Watkins' way of necessity should burden the Hurds' and the Carrs' property. Therefore, we hold that the chancellor erred in deciding that the Watkins had proved, by clear and convincing evidence, their right to a way of necessity across the Hurd's and the Carr's land.

V

For all the foregoing reasons, the judgment of the trial court will be reversed and final judgment will be entered here.

*Reversed and final judgment.*