Present: Carrico, C.J., Compton, Stephenson,[*] Lacy, Hassell, Keenan, and Koontz, JJ.

J. RUSSELL PARKER, III, ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 962149                    September 12, 1997

ANNE W. PUTNEY

FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
Samuel T. Powell, III, Judge

This is an appeal in an equity suit in which the plaintiffs, whose property fronts on a navigable river, seek declaration of an implied easement by necessity across land of the defendant.

The sole issue is whether the trial court erred in finding that privately owned boat landings along the river afford plaintiffs reasonable access to their property via the river and that this access is sufficient to deny the plaintiffs a right of way by necessity.

The alleged dominant and servient tracts are situated near the Chickahominy River in Charles City County. The river meanders in many directions in the general area of the subject properties and eventually flows into the James River a few miles away just below a drawbridge carrying State Route 5 across the Chickahominy.

In the immediate area of the tracts in question, the Chickahominy flows nearly due south. The properties lie west of the river; they are bounded on the north by a branch of Old Neck Creek, which flows into the Chickahominy. Route 627, a public

_____
[*]Justice Stephenson participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1997.

road, lies nearby and west of the subject lands.

In May 1995, appellants J. Russell Parker, III, James H. Pace, Robert A. Wood, and Cleveland G. Humphrey, Jr., filed a motion for declaratory judgment in chancery against appellee Anne W. Putney (now Manson) asking the court to rule they are entitled to an easement by necessity to afford them access to their land from Route 627.

The plaintiffs are fee simple owners of 40.5 acres of marshland fronting on the Chickahominy.  This marsh is east of a 7.9-acre tract owned by defendant.  Defendant's land abuts Old Neck Creek and lies between Route 627 and the plaintiffs' land.  The plaintiffs seek access to their marsh by way of Old Neck Creek utilizing a 30-foot wide non-exclusive easement, running east from Route 627, which leads to a 20-foot wide north-south easement running 377.41 feet across defendant's property to the creek.

The plaintiffs alleged that unless they are entitled to use of the 20-foot easement their tract is landlocked.  They asserted there is "no other way for reasonable access" to their property.

Responding to the motion for declaratory judgment, the defendant denied there is an implied easement by necessity.  She claimed that plaintiffs are seeking "an easement for convenience" because "boat landings in the area already provide access to the plaintiffs' marsh."

Following a June 1996 ore tenus hearing, during which two of

the plaintiffs, the defendant, and her husband testified, the chancellor found "that an easement by necessity does not exist in favor of the plaintiffs."  We awarded plaintiffs this appeal from the August 1996 decree dismissing with prejudice the motion for declaratory judgment.

The facts are undisputed.  Title to both the plaintiffs' and defendant's parcels is traced to a common grantor.  The plaintiffs' land, which is composed of mud and swamp grass that is under water at high tide, is used only for duck hunting; it is accessible only by boat.

Upon acquisition of the property in 1990, the plaintiffs mistakenly believed they had an express easement in the right of way they now seek.  Thus, apparently without defendant's knowledge, they cleared the land, built a pier, and for about a year used the pier to launch small boats into Old Neck Creek to hunt ducks in their marsh.

The defendant, who acquired her property in 1989, challenged the plaintiffs' right to the easement.  The plaintiffs conceded they do not have a valid express easement, and presented evidence seeking to establish they are entitled to an easement by necessity because the only other access to their land is the Chickahominy River.

According to the evidence, the nearest public access to the plaintiffs' land via the river is Morris Creek landing, which is 7.5 miles downstream.

There are several privately owned places in the vicinity of plaintiffs' marsh where boats may be launched into the river. The Brickyard, owned by "Newport News Shipbuilding" and posted as private property, is 1.4 miles north of the plaintiffs' land. Chickahominy Haven, a landing where a $4 launching fee is charged and has "a cable across it at 4:00 in the morning," is 1.8 miles from plaintiffs' land. Hideaway Marina is 3.1 miles away.

The evidence further showed that plaintiffs hunt the property about "twice a week for six weeks" in December and January. Access to the marsh, and to duck blinds, is by small boats that can be hidden in the marsh. "Shooting time" begins near 5:00 a.m.

There is usually fog in the area and the marsh is frozen at times. A plaintiff testified that the "best duck hunting is in the snow and the ice." When ice has formed, the hunters are able to break the ice in Old Neck Creek "for a short distance."

A plaintiff said, "You're just taking your life in your own hands" by trying to navigate a small boat on the Chickahominy during duck hunting season; he stated hunters have become lost on the river and have collided with each other. He testified, "That's the reason we bought the marsh because I didn't want to travel the river."

The applicable law is clear. "A right of way by necessity arises from an implied grant or implied reservation of an easement based on the common law presumption that a grantor of

- 4 -

property conveys whatever is necessary for the beneficial use of the land conveyed and retains whatever is necessary for the beneficial use of the property retained." Davis v. Henning, 250 Va. 271, 276, 462 S.E.2d 106, 108-09 (1995). "To establish such a right, the alleged dominant and servient tracts must have belonged to the same person at some time in the past." Middleton v. Johnston, 221 Va. 797, 802, 273 S.E.2d 800, 803 (1981).

There must be a showing by clear and convincing evidence that the way is reasonably necessary, not absolutely necessary, to the enjoyment of the dominant estate. Id. at 803, 273 S.E.2d at 803. Accord Davis, 250 Va. at 276, 462 S.E.2d at 109. But, a way of necessity will not be established if there is another way of access, although less convenient and which will involve some labor and expense to develop. Middleton, 221 Va. at 803, 273 S.E.2d at 803.

Upon conclusion of the hearing in this cause, the chancellor, in ruling against the plaintiffs, reviewed the principles of law that we have just recited. After finding that the dominant and servient estates belonged at some time to the same landowner, the chancellor concluded "there's no question" that the plaintiffs' marsh "has access to a public road, i.e., the Chickahominy River."

The court ruled that plaintiffs have access to the privately owned Brickyard and Chickahominy Haven landings, and that the Morris Creek and Hideaway landings "are too far away and are not

reasonable to launch a boat from . . . to come up to the plaintiffs' property." Summarizing, the chancellor stated: "Most of my premise is that the Chickahominy River is a public access, and that's the equivalent of being on U.S. Route 60"; the court said this constituted "legal access to a public road." We disagree with the trial court's ruling.

In Davis, we stated that the access contemplated for an easement by necessity is a "legal" right of access. 250 Va. at 277, 462 S.E.2d at 109. The plaintiffs have no legal right to use either Brickyard or Chickahominy Haven, both privately owned. Any use of those landings which the plaintiffs may now enjoy (the evidence showed a plaintiff had used Brickyard in the past) can be immediately terminated by the respective owners.

Furthermore, while persons may lawfully travel the Chickahominy River as members of the public, and in this sense the use is "legal," this use cannot be accurately compared to the public's use of a public road. Rather, because a river may be entered and exited only at places suitable for the purpose, use of the river is more properly compared to the public's use of a limited access highway, as the plaintiffs argue.

And, the evidence is undisputed that once a person enters the river during duck-hunting season, the weather and tidal conditions make travel on the river hazardous in connection with the plaintiffs' use of their land. Thus, we conclude that the plaintiffs' "legal" access to the river is not reasonable under

- 6 -

the circumstances.

Our decision is consistent with the views of courts in other jurisdictions. A showing of access to land across navigable water may in some circumstances defeat a claim of an easement by necessity. Morrell v. Rice, 622 A.2d 1156, 1159 (Me. 1993). However, the modern view is that a way of necessity may exist, even though the dominant estate borders on a waterway, "if the water route is not available or suitable to meet the requirements of the uses to which the property would reasonably be put." Hancock v. Henderson, 202 A.2d 599, 602 (Md. 1964). This is such a case. See generally E. L. Kellett, Annotation, Easements: Way By Necessity Where Property Is Accessible By Navigable Water, 9 A.L.R. 3d 600, 608-11 (1966).

Accordingly, the decree below in favor of the defendant will be reversed. And, because there is no objection by defendant regarding the location and route of the easement, final judgment will be entered here declaring that the plaintiffs have an easement by necessity across the 20-foot wide way over the defendant's property to Old Neck Creek.

Reversed and final judgment.