# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Bessie F. Turk

v.

Spotsylvania County et al.

May 31, 2001

Case No. CH00-589

BY JUDGE WILLIAM H. LEDBETTER, JR.

The issue in this case, presented on stipulated facts, is whether a 60-foot wide parcel of land was dedicated to public use when a residential subdivision was created almost a half-century ago.

*Facts*

The pertinent facts are stipulated.

In 1955, Fredericksburg Country Club (FCC) divided 32.8 acres of its land on Tidewater Trail for residential development. A plat was prepared depicting 37 building lots, streets, and setback lines. The plat is dated June 9, 1955. The subdivision, known as Country Club Estates, was approved by the County governing body, after public hearing, on August 8, 1955. The plat and restrictive covenants/deed of dedication were recorded.

According to the plat, the streets are 60 feet wide. The entrance to the subdivision is from Tidewater Trail. The street network terminates in a cul-de-sac at the northern end next to FCC's golf course. One of the streets is known as Vance Drive, the other Brooke Drive.

On each side of the streets are broken lines, each one labelled "building line," representing the 40-foot setback lines referred to in the restrictive covenants.

The lots, of varying size, are numbered sequentially.

Along the entire southern boundary of the subdivision, FCC has expressly reserved a two-foot strip of land, effectively severing the subdivision from the tract to its south.

Near the northern end of Brooke Drive, between lots 14 and 15, is a 60-foot wide parcel designated "60' R/W." It extends from Brooke Drive to the southern boundary of the subdivision. However, it is separated from Brooke Drive by a solid black line.

The subdivision streets were taken into the state highway system in 1957. VDOT has maintained the streets ever since. The parcel designated "60' R/W" was not improved when the streets were constructed and has never been improved in any manner.

Since the subdivision was created, FCC has not been taxed for the 60-foot parcel. In fact, the County tax maps show it as a part of the street system of Country Club Estates and, consequently, is not carried on its records as a taxable parcel.

That was the status of things for 45 years. Then, in January of 2000, Bessie F. Turk, owner of Lot 15, sought to acquire the "60' R/W." FCC claimed ownership and agreed to sell the parcel to Turk. The County disagreed, contending that FCC dedicated the parcel to public use, along with the street system, when it created the subdivision. This litigation ensued.

Turk commenced this declaratory judgment suit on September 1, 2000. The defendants responded. The case was tried on stipulated facts on May 7, 2001, and taken under advisement. This opinion addresses the single issue raised by the pleadings in this case.

*Applicable Legal Principles*

Dedication is defined as the act of giving or devoting property to some public use, such as a street or a park, and accepted for such use by an appropriate public body on behalf of the public in general. See, generally, 5C M.J., *Dedication*, § 2. It is said that "the soul of every dedication" is the owner's intent to dedicate. This intent must be shown by acts and declarations that are clear, deliberate, and decided, manifesting a positive intention to permanently turn over one's property to public use. However, intent to dedicate may be inferred from facts and circumstances, and one is presumed to intend the usual and natural consequences of his actions. *Hampton v. Stieffen*, 202 Va. 777, 120 S.E.2d 361 (1961); 5C M.J. *Dedication*, § 6.

The dedication of subdivision streets is governed by statute. Virginia Code § 15.2-2265 provides that recordation of an approved plat shall transfer to the locality "the portion of the premises platted as is on the plat set apart for

streets, alleys, or other public use and [shall operate to] transfer to the locality any easement indicated on the plat to create a public right of passage over the land." The statute also provides that nothing in it "shall affect any right of a subdivider of land heretofore validly reserved." For purposes related to this case, the predecessor statutes, including the one in effect in 1955, contained essentially the same provisions. Further, the basic principles by which courts determine whether property has been effectively dedicated, summarized above, are the same now as in 1955.

In *Hurd v. Watkins*, 238 Va. 643, 385 S.E.2d 878 (1989), the Supreme Court addressed a set of facts similar to those in this case. There, the disputed parcel lay between two building lots. The parcel is 50 feet wide and 138 feet long. One end of the parcel abuts a platted and constructed street. The other end of the parcel abuts the northern boundary of the subdivision. The parcel is separated from the street it abuts by "a heavy, black, unbroken line" which comprises part of the boundaries of the street. In general, the parcel has the appearance, on the plat, of "the stub of a street which stops at the property line of the subdivision." The property was never physically developed as a street. The parcel is marked "Reserved."

The Court held "a parcel that is drawn with some of the characteristics of a street yet has the end which would connect with another subdivision street closed off in bold ink with the notation "Reserved" is not a parcel set apart as a street within the meaning [of the statute]."

## Decision

The court is of the opinion that FCC is the owner of the disputed parcel because it did not dedicate the parcel to public use as a part of the street system of Country Club Estates.

This case is analogous to *Hurd* except that this parcel is not marked "Reserved" on the plat. Nevertheless, there are similarities: the north end of the parcel is bounded, on the plat, by a black unbroken line which comprises part of the boundary of Brooke Drive and serves to completely separate the parcel from Brooke Drive and, consequently, the entire street system of the subdivision. Therefore, here as in *Hurd* the disputed parcel, while having some characteristics of a street, is closed off in bold ink at the end that would connect it with another subdivision street.

Further, as in *Hurd*, the parcel has never been physically developed as a street, or otherwise used by the public as a passageway of any sort.

There are a number of other facts and circumstances that support FCC's contention that it still owns the parcel.

Every building lot in the subdivision is encumbered with a 40-foot setback line along the street it faces. The restrictive covenants prohibit any construction "nearer than 40 feet to the front lot lines . . . on the 60 foot streets." The disputed parcel is not bordered by 40-foot set back lines. From this, one can reasonably infer that the parcel was not intended to be a street.

The restrictive covenants refer to the plat as showing the layout of lots "and the streets which are dedicated, being 60 feet wide, providing for a 40 foot driveway and a 10 foot sidewalk on each side." There is no evidence that any provision has ever been made for sidewalks on either side of the disputed parcel, which would be the case if it had been a part of the street network.

At the top of the plat, there is a cross-section of the subdivision streets. The cross-section shows contours of the streets, with drainage ditches on each side, and a sidewalk on each side beyond the ditches. The disputed parcel is not contoured or ditched. Hence, it is not within the definition of "street" as shown in the cross-section.

Finally, the southern end of the disputed parcel abuts a two-foot wide strip title to which was specifically reserved by FCC. Therefore, if, as the County contends, the disputed parcel were intended as a public passageway, the obvious question would be: to where? Why would the owner of the land dedicate, and why would the County accept, a stub that goes nowhere and serves no purpose? Because of FCC's retention of the two-foot wide strip along the southern boundary, no one could have planned that the street system of Country Club Estates some day would be connected by this parcel to streets in a development on land to the south of Country Club Estates.

The County's position is puzzling. Dedication imposes a burden of maintenance and potential tort liability on the public, *Brown v. Moore*, 255 Va. 523, 500 S.E.2d 797 (1998); therefore, in controversies such as this, courts should carefully scrutinize all the surrounding facts and circumstances to determine what in fact the owner intended to dedicate and, just as important, what in fact the public intended to accept. This is especially true where, as here, almost half a century has passed without the County improving the property for public use or otherwise exercising any dominion or control over it.

In its memorandum, the County asks the court to find, in the alternative, that the plat "at the very least" created a private easement over the disputed parcel for the benefit of lot owners in the subdivision. For the same reasons that the court finds that FCC never intended to dedicate the parcel to public use, the court rejects this alternative argument. Further, such a decision is beyond the scope of the pleadings.

Finally, the County suggests that, if the court should find that the disputed parcel was never dedicated to the public, the Court should require FCC to "reimburse the County for 45 years worth of lost tax revenues. . . ." Clearly, that issue is not within the purview of this litigation and the court declines to address it.