510

## CIRCUIT COURT OF LANCASTER COUNTY

Betty Snyder Wilson et al.

v.

Robin Cheryl Murray

August 3, 2001

Case No. (Chancery) CH00-20

BY JUDGE HARRY T. TALIAFERRO, III

The plaintiffs' claim in this case that their lot is entitled to the benefit of an easement for a septic drainfield over the defendant's land.[1] The plaintiffs also seek damages on a claim that the defendant tortiously interfered with a contract to sell their lot.

The evidence in this case shows that the plaintiffs' lot and the defendant's land were once part of a single parcel containing 4.63 acres acquired in 1942 by Hampton Curry. In 1966, by deed with survey attached, Hampton Curry off-conveyed from this parcel a 0.172 acre lot to his son-in-law and daughter, Russell and Genevieve Snyder. The lot fronted on Route 637 and was adjoined on all other sides by the land of Hampton Curry. The plaintiffs are the current owners of the 0.172 acre lot, and the defendant owns the surrounding property formerly owned by Hampton Curry.

The plaintiffs acquired title to their lot by intestacy from their father, Russell Snyder, who died in 1990. Subsequently, a partition suit among the plaintiffs was filed in this court. A Decree was entered in such suit on May 8, 1998, accepting a written offer from Ralph A. Waller and April R. Redmond to purchase the lot for $16,000.00. The contract of sale was contingent upon special financing from the Bank of Lancaster. The bank required a septic

---

[1] The defendant has argued in her brief that the plaintiffs failed to properly plead an easement of necessity in their amended bill of complaint. The Court finds that they did so plead.

inspection as a condition of its loan. This inspection led to the discovery that the plaintiffs' septic system was in part on the land of the defendant. The mortgagee title policy excepted to the septic field. The bank would not lend the money unless the exception was removed. In an effort to resolve this, the plaintiffs, through their real estate agents, attempted to purchase an easement from the defendant.

During the course of all this, Mr. Waller and Ms. Redmond moved into the house on the plaintiffs' lot. Their relations with the defendant who was then living in Mr. Curry's old house next door were initially good, but there was soon a falling out. The defendant refused to sell the plaintiffs an easement. The defendant, now aware that the septic system was on her lot, sent a certified letter to Mr. Waller (whom she identified as "Tony Cox" ) advising him that she was going to block off his septic system in ten days. The letter was returned. The defendant testified she hand delivered a copy of the letter to April Redmond, who was living in the same house. Thereafter, the defendant dug up the septic system and poured concrete into the distribution box, which was buried under her land, thereby blocking use of the drainfield. The Bank of Lancaster refused to make its loan, no closing took place under the contract, and some months later Mr. Waller and Ms. Redmond moved out.

The plaintiffs base their claim for an easement on either an implied easement of necessity or an easement by estoppel. We feel it necessary only to examine one of these theories, that of an implied easement of necessity.

In order to establish an implied easement of necessity, the claimant must prove by clear and convincing evidence that there was a prior unity of ownership of the dominant and servient tenements and that, as a result of the severance of such tenements, the easement is reasonably necessary to the enjoyment of the dominant estate. *Middleton v. Johnston*, 221 Va. 797, 273 S.E.2d 800, 803 (1981). This is based on the common law presumption that a grantor of property conveys whatever is necessary for the beneficial use of the land conveyed and retains whatever is necessary for the beneficial use of the property retained. *Davis v. Henning*, 250 Va. 271, 276, 462 S.E.2d 106 (1995).

Prior unity of ownership exists because the plaintiffs' and defendant's lands were once a single parcel owned by Hampton Curry. In regard to whether an easement for a septic drainfield is reasonably necessary for the enjoyment of the plaintiffs' property, the Court considers the following evidence.

The plaintiffs' lot is small, containing only .172 of an acre. The lot was severed from the Hampton Curry property in 1966 for the purpose of providing a house site for Genevieve and Russell Snyder. Jim Walter Homes, a home building corporation, prepared the survey by which the lot was originally conveyed. Mr. Curry wanted his daughter to live next to him in

order to care for him while in poor health. According to the Commissioner of Revenue's records, an improvement was on the lot as early as 1968. Within three years, the County Health Department had on file an application and issued a permit for a sewage disposal system. Genevieve and Russell Snyder moved to Virginia to live full time on the lot in the 1970s. When the plaintiffs discovered in 1999 that the drainfield was on the defendant's property, they applied to the Health Department for a permit to put a sewage disposal system on their lot. This application was turned down because there was no area on the lot outside of the 100-foot well protection radii for soil evaluation.

David Fridley of the Lancaster County Health Department qualified as an expert and testified regarding health department regulations as they pertain to the installation of septic systems. It was Mr. Fridley's testimony that it was not possible to put a regulation septic system on the plaintiffs' lot because of the setback requirements from the wells located on the plaintiffs' and defendant's property. He opined that there was no feasible way to put a septic field on the lot even if the plaintiffs' well were to be relocated.

The defendant argues that there is no reasonable necessity for the drainfield easement because (1) the plaintiffs can obtain a "pump and haul" permit, (2) the plaintiffs can install a "Puraflo" system on their lot, and (3) the plaintiffs can buy nearby land across the highway and pump their sewage over there.

Mr. Fridley testified that a "pump and haul" permit was unusual and not normally granted on a permanent basis, that the Health Department discouraged the use of such permits, and that the pumping and hauling of waste was cost prohibitive. It is a fair inference from the evidence that the only reason Mr. Waller could utilize such a permit even on a temporary basis was that he worked for a company which did septic work and could do the pump out on his own.

Mr. Fridley also testified that, because the lot was so small and the wells were in such proximity to a septic site, that it was most highly probable that a "Puraflo" system could not be used. In answer to a direct question from the defendant's counsel about whether this system would work on the lot, Mr. Fridley's answer was "no."

The Court finds that the testimony of Mr. Fridley refutes that a "pump and haul" permit or a "Puraflo" system would have been available alternatives to a standard septic drainfield.

The defendant contends that the plaintiffs have not disproved that they could have bought nearby land across the highway and pumped their sewage under the highway to a remote drainfield site on such property. This argument is based on the testimony of the defendant that there is nearby land now for sale. The defendant argues that because the alternative exists, even though less

convenient and involving labor and expenses to develop, no necessity exists for an implied easement for a septic drainfield. See *Chaileen v. Harry J. O'Meara Title Co.*, 212 Va. 510, 513, 184 S.E.2d 746, 749 (1971). The Court finds this argument without merit. The authority in Virginia places no such burden on the plaintiffs. It does not require the plaintiffs, where no drainfield site is available, to purchase such a drainfield on the property of some third party. If this were the case, then there would never be an implied easement for ingress and egress to a landlocked back parcel over the front parcel from which it was off-conveyed because the owner of the front parcel could defeat the claim for any such easement by saying that the owner of the back parcel should have bought a right of way from another adjacent property owner.

The Court holds that the evidence in this case establishes by a clear and convincing standard that the plaintiffs' lot could not be reasonably enjoyed for its intended purpose as a residential lot without an implied easement for a drainfield as presently located over the property of the defendant. The plaintiffs are thus entitled to such easement.

Finally, the Court turns its attention to the plaintiffs' claim that the defendant tortiously interfered with the contract to sell the lot to Mr. Waller and Ms. Redmond. The Court would note that the plaintiff claims damages of $16,000, that being the contract sales price to the purchasers. The Court does not believe that the value of the property would be the proper measure of damages even if tortious injury were found. The evidence in the case, however, would indicate that, while Ms. Murray certainly knew that there was a potential buyer for the property, she did not know specifically of a contract. The real estate agents who negotiated with Ms. Murray for an easement testified that they did not inform her of a contract and that it would have been a violation of their professional ethics to do so. Ms. Murray clearly had an intense dislike for Mr. Waller and wanted to get him out of the house. This was, in fact, a motive for her blocking the septic system. Although Ms. Murray may have tortiously damaged the plaintiffs' property through her conduct, such conduct, in consideration of all the evidence before the Court, does not constitute tortious interference with a contract of sale. This claim is denied.