PRESENT:  Kinser, C.J., Lemons, Goodwyn, Millette, Mims,
          and Powell, JJ., and Russell, S.J.

MAC R. CLIFTON, ET AL.

                                      OPINION BY
v. Record No. 121232        SENIOR JUSTICE CHARLES S. RUSSELL
                                   September 12, 2013
EVELYN ROSE WILKINSON

            FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Isaac St. C. Freeman, Judge

     In this appeal we revisit the requirements for the creation

of an easement by necessity.  The question arises in the context

of a parcel that became landlocked by the exercise of the power

of eminent domain, followed by the construction of a limited-

access highway over the land condemned.

                        FACTS AND PROCEEDINGS

     In 1957, special commissioners, appointed by the circuit

court in a partition suit, conveyed to C. T. Wilkinson, Jr. an

18.35-acre tract of land in Washington County.  The tract

adjoined Route 704, a public highway.  In 1961, the State

Highway Commissioner instituted a condemnation proceeding,

acquiring a strip of land through the 18.35-acre tract for the

construction of Interstate Highway I-81, a limited-access

highway.  The taking for the highway contained 3.83 acres,

leaving two residue parcels: a 4.88-acre parcel north of I-81

that retained frontage on Route 704 and a 9.64-acre parcel south

of I-81 (the ten-acre parcel) that became landlocked as a result

of the taking.  The condemnation commissioners awarded C. T.

Wilkinson, Jr. $1450 for the land taken and $2450 for damages to the residue property.

After the condemnation, Mr. Wilkinson gained access to the ten-acre tract for farming purposes by renting a neighboring 18-acre tract now owned by Mac R. Clifton, his wife Carol Clifton, and his sister, Beatrice Jones (the Cliftons). The Clifton property had access to Route 704. Mr. Wilkinson, with the permission of the Cliftons, used an unpaved lane across the Clifton property to obtain access to his landlocked ten-acre residue parcel. That arrangement continued for 45 years. In 2006, Mr. Wilkinson discontinued farming and ceased to rent the Clifton property. Mr. Wilkinson died in March 2007, and title to his property passed to his widow, Evelyn Rose Wilkinson (the complainant). In the fall of 2008, the Cliftons, having failed to reach an agreement with the complainant for a purchase of the ten-acre parcel, terminated her permissive use of the access lane and blocked it.

The complainant brought this action in the circuit court, seeking a declaratory judgment that she was entitled to use of the access lane by reason of a prescriptive easement or, in the alternative, an easement by necessity. Complainant's counsel subsequently withdrew the claim for a prescriptive easement and the court received evidence relating to the claim for an easement by necessity.

2

By a letter opinion, the court ruled that the complainant was entitled to an easement by necessity over the access lane. The court summarized the prerequisites for such an easement as: (1) common ownership of the dominant and servient tracts "at some time in the past," (2) the easement must be "reasonably necessary to the enjoyment of the land," which fact must be proved by clear and convincing evidence, and (3) there is no other means of access (to the landlocked parcel), even one less convenient or more expensive to develop. Finding that the complainant had met those requirements, the court entered an order declaring that the complainant had a right of ingress and egress over the access lane and enjoining any obstruction thereof. We awarded the Cliftons an appeal.

ANALYSIS

The dispositive question presented by this appeal is one of law. Accordingly, we apply a de novo standard of review. Mulford v. Walnut Hill Farm Group, LLC, 282 Va. 98, 109, 712 S.E.2d 468, 475 (2011).

Implicit in the conclusion reached by the circuit court is a finding that the Clifton property and the Wilkinson property were, "at some time in the past," owned by the same person. We find no evidence in the record to support that finding. The issue whether such unity of title ever existed, however, is immaterial in this case because the necessity for an easement of

ingress and egress did not arise when any such unity of title was severed.

Vast tracts of land in Virginia were at some time in the past held by a single individual,[1] and historic common ownership underlies many, if not most, adjoining parcels today.  That fact alone is not sufficient to justify an easement by necessity over neighboring lands to the owner of a parcel that becomes landlocked by the exercise of the power of eminent domain.

In this case, the necessity for an easement of ingress and egress to the ten-acre parcel arose in 1961 when the State Highway Commissioner acquired 3.83 acres for the construction of an interstate limited-access highway.  The Commissioner's declaration of taking, received as an exhibit in the present

---

[1] The royal grant to the predecessors of Thomas, Lord Fairfax, effective in 1663, embraced approximately five million acres comprising all the land between the Potomac and Rappahannock Rivers from the Chesapeake Bay westward to a line connecting the sources of those rivers.  See Fairfax's Devisee v. Hunter's Lessee, 11 U.S. (7 Cranch) 603, 604 (1812); Maryland v. West Virginia, 225 U.S. 1, 10 (1912); O'Dell v. Stegall, 703 S.E.2d 561, 570 (W. Va. 2010). See also David L. Ingram, The Virtual Museum of Surveying, History of the Fairfax Line, http://www.surveyhistory.org/the_fairfax_line1.htm (last visited July 9, 2013).  The "Fairfax Line," connecting the sources of the two rivers, was surveyed in 1746 by commissioners appointed by the Governor's Council in Williamsburg.  Using magnetic compass and chain, they ascertained its length to be approximately 76 miles.  That linear distance was verified in 1999 by surveyors using modern methods.  The line forms several county boundaries and a part of the boundary between Virginia and West Virginia.  Its northern point is the meeting point of three counties in West Virginia.  Id.

case, recites that the taking was made for the purpose of the construction of "Route 81, a Limited Access Highway, as defined by 33-37, Code of Virginia of 1950."  Code § 33-37, then in effect, provided:

> A limited access highway is defined as a highway especially designed for through traffic, over which abutters have no easement or right of light, air or access to by reason of the fact that their property abuts upon such limited access highway.[2]

Therefore, the ten-acre parcel became landlocked by the Commissioner's highway taking and not by any action taken by any present or former owner of either the Clifton or the Wilkinson properties or any common owner of both.

Owners of property damaged by the exercise of the power of eminent domain are entitled to just compensation by the self-executing provisions of Article I, Section 11 of the Constitution of Virginia.  Gray v. Virginia Sec'y of Transp., 276 Va. 93, 104, 662 S.E.2d 66, 72 (2008).  Thus, C. T. Wilkinson, Jr. sought and received an award of damages in the 1961 condemnation proceeding to compensate him for the

---

[2] Former Code § 33-37 was repealed effective October 1, 1970.  See 1970 Acts ch. 322.  The statutory language is identical to the language now appearing in Code § 33.1-57, which has been in effect since October 1, 1970.

diminution in the value of his residue property caused by the taking.

> A right of way by necessity arises from an implied grant or implied reservation. Stated differently, it is an easement implied upon a conveyance of real estate. To establish such a right, the alleged dominant and servient tracts must have belonged to the same person at some time in the past. The right is based upon the idea that whenever one conveys property, he conveys that which is necessary for the beneficial use of the land and retains that which is necessary for the beneficial use of the property he still possesses.

> Thus, in the case of an implied grant, an easement is acquired by a grantee over the grantor's property when the land conveyed is either entirely surrounded by property of the grantor or else is bordered in part by the land of a stranger and in part by lands of the grantor. Under either situation, the grantee obtains a way of necessity over the grantor's property because otherwise the land conveyed would be inaccessible and useless.

Middleton v. Johnston, 221 Va. 797, 802-03, 273 S.E.2d 800, 803 (1981) (citations omitted).

Although we stated above that both tracts "must have belonged to the same person at some time in the past," the context makes clear that an easement by necessity arises only when the grantor of the dominant tract conveys it to another without providing any right of access to it. It does not arise when a former unity of title has been severed between two tracts without impairing any right of access to either tract.

6

We made this distinction explicit in <u>American Small Business Investment Co. v. Frenzel</u>, 238 Va. 453, 456, 383 S.E.2d 731, 734 (1989):

> A right of way by necessity is based on the theory that when a grantor conveys property he does so in a manner which will allow beneficial use of both the property he conveys as well as any property he retains. This type of easement arises from an implied grant or implied reservation. It is essential to this theory that the necessity arise simultaneously with the conveyance. If the conveyance does not preclude the beneficial use of either the property conveyed or the property retained, an implied grant or reservation is unnecessary. The necessity cannot arise subsequent to the conveyance because "the necessity referred to is <u>the subjective necessity of the inference</u> that the parties so <u>intended at the time of the grant</u>" or reservation.
>
> To establish a right of way by necessity certain conditions must be met. First, the land must have been under common ownership at some time and this unity of title must have been severed. The severance must have given rise to the need for the right of way.

(Citations omitted, emphasis in original.)

## CONCLUSION

Because the ten-acre tract did not become landlocked by a conveyance from a former owner severing a former unity of title, no implied grant of a right of ingress and egress arose. Therefore, a former common ownership of the dominant and servient tracts, if such unity existed in the past, is immaterial. The ten-acre tract suffered damages by the taking

7

of its access rights by eminent domain.  Those damages were compensable in the condemnation proceeding in 1961, but did not give rise to any implied grant of access rights over the lands of others.

For the foregoing reasons, we will reverse the judgment of the circuit court and enter final judgment here for the Cliftons.

<u>Reversed and final judgment.</u>